In re Interest of Destiny A. et al., children
under 18 years of age.
State of Nebraska, appellee, v.
Wendy A., appellant.
742 N.W.2d 758

Filed December 21, 2007. No. S-06-1380.

Thomas C. Riley, Douglas County Public Defender, and Mona L. Burton for appellant.

Eric Strovers, Deputy Douglas County Attorney, for appellee.

Thomas G. Incontro and Shawntal M. Smith, of Thomas G. Incontro, P.C., L.L.O., guardians ad litem.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

We granted Wendy A.'s petition for further review of a Nebraska Court of Appeals' memorandum opinion and judgment on appeal filed on May 24, 2007. The Court of Appeals affirmed the separate juvenile court's decision terminating Wendy's parental rights to her three children under Neb. Rev. Stat. § 43-292 (Reissue 2004). We granted Wendy's petition to clarify an inconsistency between case law and Neb. Rev. Stat. § 43-292.02(2) (Reissue 2004). That statute states that a court deciding whether to terminate parental rights should not consider that an adoptive family has been identified. We conclude that under § 43-292.02(2), a juvenile court, in terminating parental rights, cannot consider whether an adoptive family has been identified. Although the juvenile court erroneously considered the foster parents' willingness to adopt, we disregard that evidence in our de novo review. We conclude the guardian ad litem presented other clear and convincing evidence that terminating Wendy's parental rights is in the children's best interests. We affirm.

## BACKGROUND

Wendy is the natural mother of the following minor children: Vincent R., Jr., born July 6, 1998; Destiny A., born March 19, 2002; and Antonio A., born January 21, 2003. The court removed all three children from Wendy's care and placed

them in the custody of the Nebraska Department of Health and Human Services (DHHS).

The day after Destiny's birth, the court placed her in DHHS' custody. An affidavit attached to the motion for temporary custody stated Wendy tested positive for drugs at Destiny's delivery and had admitted to using marijuana weekly during her pregnancy. Destiny has remained in out-of-home placement since the day of her birth. About 3 weeks later, on April 10, 2002, the court determined that she was a child in need of special supervision.

On January 8, 2003, the State moved for temporary custody of Vincent. An affidavit stated that Wendy had admitted to using methamphetamine and marijuana while pregnant with Destiny; she had admitted to using marijuana since Destiny's removal; she had not complied with the court's orders relating to Destiny's case; she had tested positive for methamphetamine on two separate occasions since Destiny's removal; and she continued to use illegal drugs even though she was 7 months pregnant. The court issued an order for immediate custody. Vincent has remained in out-of-home placement since then.

Antonio has been in out-of-home custody since January 22, 2003, the day after his birth. An affidavit attached to the motion for temporary custody stated that Wendy's maternal drug screen tested positive for amphetamines, barbiturates, cocaine, and cannabinoids. On April 17, the court determined that Antonio and Vincent were children in need of special supervision.

### WENDY'S PARENTAL RIGHTS ARE TERMINATED

In November 2004, the State moved to terminate Wendy's parental rights. In May 2005, however, the State moved to dismiss the motion for termination. The court granted the motion to dismiss and dismissed the State's motion with prejudice.

However, in May 2006, the children's guardian ad litem moved to terminate Wendy's parental rights. The guardian ad litem alleged that the court should terminate Wendy's parental rights under § 43-292(2), (3), (6), and (7), and that it was in the children's best interests.

The guardian ad litem called each child's current foster mother to testify. Destiny's foster mother testified, over Wendy's objection, that Destiny usually stated she did not want to attend scheduled visits with Wendy. The court also overruled Wendy's objection when Destiny's foster mother testified that if Destiny became free for adoption, she would be willing to provide care and support for her. The court also allowed Antonio's foster mother to testify that Antonio tells her he does not want to go on visits with Wendy. Wendy also objected when Antonio's foster mother testified that she and her husband would be willing to provide Antonio a loving home if he became available for adoption. The court overruled Wendy's objection.

The director of Destiny and Antonio's daycare testified that she sometimes observed Destiny right before a visitation with Wendy and that Destiny was usually withdrawn. Destiny would cling to the daycare personnel and say she did not want to go on the visit. The daycare director stated this was the same for Antonio. The case manager testified that when she observed visits between Wendy and the children, she noticed Destiny and Antonio did not seem excited to be there.

Other testimony showed Wendy had generally complied with the case plan and continued to make progress. Witnesses reported that during visits with the children, Wendy was affectionate and nurturing. The family's case manager from June 2004 through February 2006 testified that Wendy had submitted to random urinalysis screenings, which were negative. She further stated she had no concerns that Wendy was using drugs or alcohol during that time.

But evidence established that Wendy's April 26, 2006, urinalysis was positive for methamphetamine. After the positive test, a case manager sent Wendy two letters, the first requesting she complete a urinalysis on May 25, and the second requesting two more urinalysis screenings in June. Wendy did not comply with these requests.

Evidence also showed Wendy missed individual therapy sessions at about the same time. She attended six sessions from March to May 2006, but she missed the next six sessions. Although she gave the therapist reasons for missing three of the sessions, the other three missed sessions were "no-shows."

On November 6, 2006, the juvenile court terminated Wendy's parental rights. The court found by clear and convincing evidence that grounds existed under § 43-292(2), (3), (6), and (7) for termination. The court also decided that termination was in the children's best interests and denied Wendy's motion for continued visitation.

## COURT OF APPEALS' DECISION.

Wendy appealed the juvenile court's decision to the Court of Appeals. Wendy assigned 13 errors. Wendy made the following claims: (1) the court erred in overruling her relevance objections to testimony that the foster parents were willing to adopt Destiny and Antonio, (2) the court erred in overruling her objections to the foster mothers' testimony that the children did not want to attend visits with Wendy, and (3) the court erred in finding that terminating Wendy's parental rights was in the best interests of the children.

Wendy claimed that under § 43-292.02, testimony that foster parents are willing to adopt the child should have no bearing in a termination of parental rights hearing. The Court of Appeals decided the lower court did not err in overruling Wendy's objections to the foster parents' testimony. The Court of Appeals concluded that "[s]uch evidence is necessary to show that termination of a parent's rights is in the children's best interests, specifically that the children would be provided with more permanency than they would have otherwise."

Wendy also argued the court violated her due process rights when it overruled her hearsay objections and allowed the foster mothers to testify that Destiny and Antonio stated they did not want to go on visits. The Court of Appeals noted that Wendy's counsel cross-examined both foster mothers and that other evidence showed the children's reactions to visitation. The court concluded the totality of the record showed Wendy was afforded due process regarding the testimony about the children's statements.

Finally, Wendy argued that termination was not in the children's best interests because Wendy and the children had a "positive relationship" and because she complied with the

rehabilitation plan.[1] Wendy claimed that she had made "great strides in turning her life around, remaining drug free and placing herself in a position to parent her children."[2] The Court of Appeals concluded that the lower court did not err in finding that the termination of Wendy's parental rights was in the children's best interests. The Court of Appeals relied on evidence that the children had not returned to Wendy's care since their removal; that Wendy tested positive for drugs in April 2006; that her visitation and therapy attendance became more sporadic around that time; that the children have been in stable, loving foster homes; and that two of the children will likely be adopted by their foster families.

The Court of Appeals concluded there existed clear and convincing evidence to support a finding that Wendy's parental rights should be terminated under § 43-292(7) and that termination was in the children's best interests. The court affirmed the order terminating Wendy's parental rights. We granted Wendy's petition for further review.

## ASSIGNMENTS OF ERROR

Wendy assigns, restated, that the Court of Appeals erred in (1) deciding the juvenile court properly allowed the foster mothers' testimony regarding their willingness to adopt the children, (2) determining that Wendy's due process rights were sufficiently protected even though the foster mothers were allowed to testify about the children's statements regarding visitation, and (3) deciding that the termination of Wendy's parental rights is in the children's best interests.

## STANDARD OF REVIEW

■ Statutory interpretation presents a question of law.[3] When we review questions of law, we resolve the questions independently of the lower court's conclusions.[4]

---

[1] Brief for appellant at 40.

[2] *Id.* at 42.

[3] *Zach v. Eacker*, 271 Neb. 868, 716 N.W.2d 437 (2006).

[4] See *id.*

█ Juvenile cases are reviewed de novo on the record, and we review the issues independently of the lower court's findings.[5]

## ANALYSIS

### THE COURT OF APPEALS ERRED IN DECIDING THAT TESTIMONY REGARDING THE FOSTER PARENTS' WILLINGNESS TO ADOPT THE CHILDREN WAS ADMISSIBLE

Section 43-292.02(2) provides, in part, "The fact that a qualified family for an adoption of the juvenile has been identified, recruited, processed, and approved shall have no bearing on whether parental rights shall be terminated." Wendy argued to the Court of Appeals that under § 43-292.02(2), the juvenile court erred in allowing the foster mothers to testify that they were willing to adopt the children.

█ In interpreting § 43-292.02, we look to the statute's legislative history. For a court to inquire into a statute's legislative history, the statute in question must be open to construction. A statute is open to construction when its terms require interpretation or may reasonably be considered ambiguous.[6] A statute is ambiguous when the language used cannot be adequately understood either from the plain meaning of the statute or when considered in pari materia with any related statutes.[7]

The relevant provision in § 43-292.02(2) is ambiguous. Section 43-292.02 addresses the State's duty to file a petition to terminate parental rights. Subsection (1) identifies cases in which the State has a duty to file a petition. Subsection (2) provides:

A petition shall not be filed on behalf of the state to terminate the parental rights of the juvenile's parents or, if such a petition has been filed by another party, the state shall not join as a party to the petition if the sole factual basis for the petition is that (a) the parent or parents of the juvenile are financially unable to provide health care for the juvenile or (b) the parent or parents of the juvenile are incarcerated. The fact that a qualified family for

---

[5] *See In re Interest of Xavier H., ante* p. 331, 740 N.W.2d 13 (2007).

[6] *Zach v. Eacker, supra* note 3.

[7] *Id.*

an adoption of the juvenile has been identified, recruited, processed, and approved shall have no bearing on whether parental rights shall be terminated.

The inclusion of the second sentence in subsection (2) creates an ambiguity. When considering the statute as a whole, it is unclear whether the relevant language applies only in those cases identified in the first sentence of subsection (2), or whether it applies in all parental rights termination cases. Here, the petition's factual basis is not one of those identified in subsection (2). Thus, the relevant language is inapplicable if it applies only in cases falling within subsection (2). Because the provision is ambiguous, the statute is open to construction.

The Legislature enacted § 43-292.02 through 1998 Neb. Laws, L.B. 1041. The legislative history for L.B. 1041 suggests the relevant provision appears in subsection (2) because all the provisions now appearing in subsection (2) were added by a single amendment to the bill.[8] We do not believe the provision's application is limited to those cases in subsection (2). The amendment's introducer explained the purpose of the provision:

And then the third matter that's covered by this amendment is that the fact that an adoptive family has been identified or recruited should not be a fact considered by the court in determining whether parental rights are terminated. And that really is clear to any judge, I think, that you . . . the court has to make a determination on parental rights based upon the facts of that case, not whether somebody is willing to adopt the child or not. That's the second step. First you deal with the criteria of law in determining whether parental rights should be terminated. After that has been treated, if parental rights are terminated, then you go to the next step and you proceed with the adoption.[9]

This explanation does not limit the provision's application to only those cases appearing in the first sentence of subsection (2). Instead, the provision applies in all parental rights termination cases, including the one currently before us.

---

[8] Floor Debate, 95th Leg., 2d Sess. 13122 (Mar. 10, 1998).

[9] Id. at 13122-23.

 Section 43-292.02(2) expressly provides that when deciding whether to terminate parental rights, a court should not consider that an adoptive family has been identified. The Court of Appeals erroneously decided the juvenile court did not err in allowing the foster mothers to testify about their willingness to adopt the children. The Court of Appeals further erred in considering this evidence when it decided that terminating Wendy's parental rights was in the best interests of the children. The court's error, however, is not a reversible error because Wendy properly objected at trial, and we will not consider this testimony in our de novo review of the best interests issue.[10]

In the recent case of *In re Interest of Phoenix L.*,[11] although the appellant did not raise the issue, in determining that termination of parental rights was in the children's best interests, we noted that the children's foster family wished to adopt the children. To the extent we relied on this evidence, we disapprove of that language.

### THE COURT OF APPEALS DID NOT ERR IN DECIDING WENDY'S DUE PROCESS RIGHTS WERE SUFFICIENTLY PROTECTED

The juvenile court allowed Destiny's and Antonio's foster mothers to testify that the children had stated they did not want to go on visits with Wendy. Wendy contends that the Court of Appeals erred in determining that her due process rights were sufficiently protected when the juvenile court allowed this testimony. She argues the statements were hearsay. The Court of Appeals decided, based on the totality of the record, that Wendy was afforded due process regarding the receipt of the foster mothers' testimony. The court noted that Wendy's counsel cross-examined both foster mothers. The court also noted that other witnesses provided evidence of the children's reactions to visitation and that Wendy did not assign as error their testimony.

 The Nebraska Evidence Rules do not apply in cases involving the termination of parental rights.[12] Instead, due

---

[10] See *In re Interest of D.S. and T.S.*, 236 Neb. 413, 461 N.W.2d 415 (1990).

[11] *In re Interest of Phoenix L.*, 270 Neb. 870, 708 N.W.2d 786 (2006).

[12] *In re Interest of Rebecka P.*, 266 Neb. 869, 669 N.W.2d 658 (2003).

process controls and requires that the State use fundamentally fair procedures before a court terminates parental rights.[13] In determining whether admission or exclusion of particular evidence would violate fundamental due process, the Nebraska Evidence Rules serve as a guidepost.[14]

But even if we were to determine that the foster mothers' testimony was inadmissible hearsay, any error on the part of the juvenile court was harmless.[15] The director for Destiny and Antonio's daycare and the family's DHHS case manager both testified about Destiny's and Antonio's reactions to visitation. Wendy did not assign as error the admission of their testimony. As we stated in *In re Interest of Gloria F.*,[16] "'[A]ny error in receiving the [testimony] was not fatal to the juvenile court's determination [because] [t]he court had before it other evidence, in the form of testimony and exhibits . . . sufficient to sustain the order of termination.'" Even if the court had excluded the foster mothers' testimony, the court still would have been aware of the children's reactions to visitation. Therefore, we need not determine whether the testimony was inadmissible. The Court of Appeals did not err in deciding Wendy's due process rights were sufficiently protected.

### THE COURT OF APPEALS DID NOT ERR IN DETERMINING THAT THE TERMINATION OF WENDY'S PARENTAL RIGHTS WAS IN THE CHILDREN'S BEST INTERESTS

Wendy contends the Court of Appeals erred in deciding that terminating her parental rights was in the children's best interests. Wendy argues that "[t]ermination of parental rights is only appropriate as a last resort, not simply because there appears to be a more attractive alternative for the children or because the court reasonably believes that some other person could

[13] *Id.*

[14] See, *In re Interest of Kassara M.*, 258 Neb. 90, 601 N.W.2d 917 (1999); *In re Interest of Floyd B.*, 254 Neb. 443, 577 N.W.2d 535 (1998).

[15] See *In re Interest of Gloria F.*, 254 Neb. 531, 577 N.W.2d 296 (1998).

[16] *Id.* at 538, 577 N.W.2d at 302 (quoting *In re Interest of R.A.*, 226 Neb. 160, 410 N.W.2d 110 (1987), *overruled on other grounds, In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 417 N.W.2d 147 (1987)).

better provide for the child."[17] Wendy asserts that the Court of Appeals incorrectly relied on the relationship between the children and their foster parents as a reason to affirm the juvenile court's decision. She claims that she and the children have a "positive relationship" and that she has complied with the plan of rehabilitation.

Before parental rights may be terminated, the evidence must clearly and convincingly establish one or more of the statutory grounds permitting termination and that termination is in the juvenile's best interests.[18] We have held that where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of the parental rights.[19] The State removed the children from Wendy's care because of her illegal drug use. Therefore, her testing positive for methamphetamine in April 2006 is particularly worrisome. Also, we cannot ignore that a case manager sent Wendy letters requesting she complete three additional drug tests after the April test, but Wendy failed to comply with the requests. About the same time, Wendy missed three therapy sessions without giving a reason for her absences.

Wendy correctly asserts that termination of parental rights should be a last resort.[20] Yet, the system has run out of options. It has extended a helping hand. But by testing positive for methamphetamine in April 2006, missing three subsequent drug tests, and failing to appear for her therapy sessions, she has shown that she is unwilling or unable to rehabilitate herself. When the court terminated Wendy's parental rights, Vincent had been in foster care for 3 years. Destiny and Antonio had spent their entire lives, 4 years and 3 years, in foster care. The system cannot and should not allow children to languish in

---

[17] Memorandum brief for appellant in support of petition for further review at 6.

[18] See *In re Interest of Xavier H., supra* note 5.

[19] *In re Interest of DeWayne G. & Devon G.,* 263 Neb. 43, 638 N.W.2d 510 (2002).

[20] See *In re Interest of Xavier H., supra* note 5.

foster care waiting to see if the parent will mature.[21] After a de novo review of the record, we conclude there exists clear and convincing evidence that terminating Wendy's parental rights is in the children's best interests. The Court of Appeals did not err in affirming the lower court's decision.

## CONCLUSION

The Court of Appeals erroneously decided the juvenile court did not err in allowing the foster parents to testify about their willingness to adopt the children. Section 43-292.02(2) provides that such evidence shall have no bearing on whether a court should terminate parental rights. But the Court of Appeals' error is not a reversible error because we did not consider this testimony in our de novo review of the best interests issue.

The Court of Appeals did not err in deciding Wendy's due process rights were sufficiently protected when the juvenile court allowed the foster mothers to testify about the children's statements regarding visitation. Any error by the juvenile court in admitting the testimony was harmless error.

The Court of Appeals did not err in determining that the termination of Wendy's parental rights is in the children's best interests. Given that Wendy tested positive for methamphetamine in April 2006 and other evidence on the record, we conclude there exits clear and convincing evidence that terminating Wendy's parental rights is in the best interests of the children. We affirm.

AFFIRMED.

---

[21] *In re Interest of DeWayne G. & Devon G., supra* note 19.