IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

IN RE INTEREST OF ANTHONY P. & DAKOTA P.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF ANTHONY P. AND DAKOTA P., CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,
V.
MARIA J., APPELLANT.

Filed January 7, 2014.    No. A-13-584.

Appeal from the Separate Juvenile Court of Douglas County: CHRISTOPHER KELLY, Judge. Affirmed.

Matthew R. Kahler, of Finley & Kahler Law Firm, P.C., L.L.O., for appellant.

Donald W. Kleine, Douglas County Attorney, and Shakil Malik for appellee.

INBODY, Chief Judge, and MOORE and RIEDMANN, Judges.

RIEDMANN, Judge.

### INTRODUCTION

Maria J. appeals the decision of the separate juvenile court of Douglas County terminating her parental rights to her children, Anthony P. and Dakota P. Upon our de novo review of the record, we find that the State presented sufficient evidence to warrant termination of Maria's parental rights. As such, we affirm the order of the juvenile court terminating Maria's parental rights to her children.

### BACKGROUND

On October 31, 2011, the State filed a petition alleging that the children, Dakota, born in January 1999, and Anthony, born in July 2001, should be adjudicated under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008) due to the faults and habits of their mother, Maria. Specifically, the State alleged that the children were at risk of harm from Maria's use of controlled substances,

- 1 -

that Maria admitted storing controlled substances in the children's bedroom, and that the children were removed from Maria's care on July 20, 2011, when she was arrested for possession of a controlled substance. An amended petition filed in January 2012 alleged that Maria's use of controlled substances placed the children at risk of harm and that she has failed to provide safe, stable, or appropriate housing for the children, placing them at harm.

In February 2012, the matter was tried on stipulated facts, which included that police would testify that they had located Maria's purse, containing methamphetamine, in the children's bedroom on July 20, 2011; that on July 26, a urinalysis showed the presence of methamphetamine in Maria's system; that Maria did not have safe, stable, or appropriate housing for the children; and that caseworkers would testify that the above factors placed the children at risk of harm. Anthony and Dakota were adjudicated under § 43-247(3)(a). Subsequent dispositional orders required Maria to participate in dual-diagnosis therapy, cooperate with family support worker services as arranged by the Department of Health and Human Services (DHHS), submit to random drug and alcohol testing, participate in individual and family therapy, maintain safe and adequate housing for herself and her children, maintain a legal source of income, maintain monthly contact with DHHS, and participate in family team meetings. Maria was to be allowed reasonable rights of supervised visitation as arranged by DHHS.

In December 2012, the State filed a motion to terminate Maria's parental rights. The petition alleged that termination of Maria's parental rights was in the best interests of the children because (1) Maria had abandoned the children for 6 months or more immediately prior to the filing of the petition; (2) Maria had substantially and continuously or repeatedly neglected or refused to give the children necessary care and protection; (3) reasonable efforts to preserve or reunify the family, under the direction of the court, had failed to correct the conditions leading to the children's adjudication under § 43-247(3)(a); (4) the children had been in an out-of-home placement for 15 or more of the most recent 22 months; and (5) Maria had subjected the children to aggravated circumstances, including, but not limited to, abandonment, torture, chronic abuse, or sexual abuse. The petition further alleged that Maria had failed to consistently participate in drug or alcohol testing or in dual-diagnosis treatment to address substance abuse and mental health, maintain safe and adequate housing for herself and her children, maintain a legal source of income, participate in case management services provided by DHHS, and participate in visitation with the children.

At the hearing on the motion to terminate parental rights, the State presented testimony from Charles Kaup, a family permanency supervisor with Nebraska Families Cooperative (NFC), who was involved with Maria's family from July 2011 until July 1, 2012. Kaup testified that Maria had come to the attention of the State in July 2011 following the police raid that found methamphetamine in her home and in her system. He stated that Maria initially entered into a voluntary placement agreement permitting her mother to care for the children. Kaup testified that Maria was initially compliant with the State's directives, attending visitations and meeting with the family permanency specialist. However, he stated that she soon began missing her urinalysis tests and saying that she wanted to give custody of the children to her mother because she did not feel she needed to participate in services any further. By October 2011, Maria had missed five scheduled appointments to have a chemical dependency evaluation completed and was also uncooperative with the service which was helping her schedule those appointments. Kaup stated

that, as a result, DHHS determined that a voluntary placement was not appropriate given Maria's lack of progress, and DHHS subsequently filed the petition to adjudicate the children.

Kaup testified that Maria stopped contacting caseworkers following the February 2012 adjudication hearing and that her noncompliance resulted in no meetings with NFC in March or April 2012 and in Maria's missing all of her scheduled urinalysis tests. NFC was therefore unable to refer Maria to services for dual-diagnosis therapy. Kaup described Maria as noncompliant between February and June 2012 in her participation in family therapy with Mary Ellen Christ-Anderson, attending 2 of 10 family therapy sessions. Kaup stated that family support services were discontinued in April 2012 because Maria failed to maintain contact with any of her providers. He said that Maria contacted NFC in May 2012 but only cooperated with two out of her six scheduled urinalysis tests. Kaup testified that by the time he stopped supervising the case in July 2012, Maria had failed to show that she had obtained stable housing or a legal source of income, and had attended two of the nine offered visits with her children. He stated that Maria failed to provide NFC with a current address or telephone number, as required by the court. Kaup acknowledged that he had never observed Maria interact with the children and that there were reports from February 2012 indicating that Maria had become more consistent with visitations. However, according to Kaup, she soon stopped contacting caseworkers and regressed in her behaviors.

Anna Hoyt, a family permanency specialist with NFC, was assigned to Maria's case in August 2012. She explained that she read through the case file and then made unsuccessful attempts to contact Maria through September. She said that the case notes indicated that Maria had not had contact with a caseworker since May 2012. Hoyt testified that when she reached Maria via telephone in October, she was met with "great anger" and a refusal to meet or work with services, and accusations of trying to destroy Maria's family. Hoyt stated that Maria had just been discharged from visitation, was not compliant with urinalysis testing or hair follicle testing, and was not attending family therapy. After this conversation, Hoyt was unable to reach Maria until December 2012, at which time Maria again refused to meet with her. Hoyt saw Maria at a January 2013 court hearing, at which time Maria commented under her breath as to her anger with Hoyt. Since then, Hoyt has had no contact with Maria.

Hoyt testified that NFC never received a verification of income or housing from Maria. She said that progress had slowed significantly in April 2012, following a "very negative visit" in which Maria became irritated with Dakota, pushed Dakota against a wall, put her hands around Dakota's neck, and had to be physically stopped and then separated from Dakota. Hoyt stated that by July 2012, Maria was no longer present for visits, was no longer having contact with the children, and "wasn't being a parent any longer." Hoyt testified that there was no subsequent point at which Maria began to re-engage with the children, although she occasionally called Anthony and Dakota. Hoyt stated that Maria had not completed any of the court-ordered requirements. In Hoyt's opinion, based on her training, knowledge, and experience, it was in the best interests of the children that Maria's parental rights be terminated.

Also entered into evidence was the deposition testimony of Christ-Anderson, a mental health counselor who has worked with Anthony and Dakota since September 2011. Christ-Anderson initially conducted pretreatment assessments on the children, identifying Dakota as a caretaker in her home who presented with a "pseudomaturity" that made it difficult

for her to accept authority. Dakota behaved with rudeness and disrespect to school authorities, and at times, she threatened her peers when angry. Christ-Anderson described Anthony as very immature for his age as a result of being babied by Maria. This immaturity created problems for Anthony in school. When upset, Anthony complains about headaches and easily shuts down. Christ-Anderson stated that Maria's abandonment made Dakota appear hardened while being, in fact, very sad. She stated that Anthony was tearful and seemed to believe that Maria was "on some farm."

Dakota related the choking incident to Christ-Anderson, after which Dakota did not want to see Maria. Christ-Anderson stated that this visit was the culmination of other bad visits and inappropriate interactions between Dakota and Maria. These incidents, in conjunction with Maria's sporadic visitation record, led to Dakota's feeling of abandonment. In June 2012, Christ-Anderson had to physically intervene in a verbal confrontation between Dakota and Maria after Dakota described being hit with a hairbrush by Maria. Anthony and Dakota both left the visit. There was not another joint session with Maria until February 2013, because of Christ-Anderson's inability to contact Maria.

Christ-Anderson acknowledged that in the course of two visits in early 2013, Maria was less argumentative, less defensive, calmer, and more appropriate with the children. However, Christ-Anderson did not think this progress was sufficient to warrant nontherapeutic visitations with the children. Christ-Anderson stated that both children are attached to Maria but nonetheless recommended the termination of Maria's parental rights to both children based on Maria's lack of contact with the children, her issues, and her lack of stability.

On June 3, 2013, the juvenile court found by clear and convincing evidence that the children were within the meaning of Neb. Rev. Stat. § 43-292(1), (2), (6), (7), and (9) (Cum. Supp. 2012), and that it was in their best interests that Maria's parental rights be terminated. Maria timely appealed to this court.

## ASSIGNMENTS OF ERROR

Maria asserts, as summarized, that the juvenile court erred in finding it was in her children's best interests that her parental rights be terminated.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Thomas M.*, 282 Neb. 316, 803 N.W.2d 46 (2011).

When the evidence is in conflict, an appellate court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Sir Messiah T. et al.*, 279 Neb. 900, 782 N.W.2d 320 (2010).

## ANALYSIS

The juvenile court found that the State proved grounds for termination under § 43-292(1), (2), (6), (7), and (9). Under § 43-292(7), the State must show that the child has been in an out-of-home placement for 15 or more months of the most recent 22 months. The evidence was unchallenged that Anthony and Dakota had remained in out-of-home placements since they were

removed from Maria's home in July 2011. Accordingly, the State proved § 43-292(7) by clear and convincing evidence.

We recognize Maria's argument that termination of parental rights under § 43-292(7) must comport with fundamental fairness. She contends in her brief that the ultimate responsibility for the children's extended out-of-home placement lies with the professionals employed to provide services to her. She points to evidence of delays in providing psychiatric services and a chemical dependency evaluation. For instance, Hoyt acknowledged that she did not refer Maria for an updated chemical dependency evaluation or refer her to psychiatric services. However, Hoyt explained that she was first assigned to the case on August 31, 2012, but was unable to contact Maria throughout September. Maria happened to call the children's home in October, when Hoyt was visiting. It was at this time that Maria expressed "great anger" toward Hoyt and refused to meet with her. Hoyt testified that she provided Maria with contact information at that time and that she continued efforts to contact Maria, but Maria refused to meet with her. Hoyt again provided contact information for Maria but was unable to see or meet with her until the January 2013 court hearing.

Similarly, Kaup admitted to deficiencies in some of NFC's procedures, such as when a caseworker misplaced the paperwork for one of Maria's psychological evaluations in 2011. However, his overall testimony painted a picture of a noncompliant Maria who failed to comply with such basic requirements as providing her contact information and keeping appointments for drug testing. Kaup believed that Maria's noncompliance resulted in NFC's inability to refer her to services for dual-diagnosis therapy. We find that any shortcomings on the part of the professionals dealing with Maria were more than outweighed by Maria's own failures and weaknesses in dealing with them.

Because the State need prove only one ground for termination, we decline to consider Maria's assigned errors regarding the court's determination that the State proved other grounds enumerated in § 43-292. Generally, when termination is sought under subsections of § 43-292 other than subsection (7), the evidence adduced to prove the statutory grounds for termination will also be highly relevant to the best interests of the juvenile. See *In re Interest of Aaron D.*, 269 Neb. 249, 691 N.W.2d 164 (2005). Thus, we will consider evidence relevant to the other grounds in our analysis of the children's best interests.

The record shows that Maria's contact with her children since their removal from her home in 2011 has been extremely sporadic, that Maria has no stability in her life, and that Maria has been uncooperative with caseworkers and uninterested in complying with court orders. Christ-Anderson testified that the attachment between Maria and her children is unhealthy. Both children suffer from the effects of Maria's behaviors. There was little or no evidence to show that Maria is able or willing to meet the children's emotional or physical needs. Christ-Anderson and Hoyt testified that it was in the best interests of Anthony and Dakota that Maria's parental rights be terminated, citing Maria's failure to visit her children, her lack of stability, and her inability to meet the children's needs.

The system cannot and should not allow children to languish in foster care waiting to see if the parent will mature. *In re Interest of Destiny A. et al.*, 274 Neb. 713, 742 N.W.2d 758 (2007). We conclude that clear and convincing evidence demonstrates that termination of Maria's parental rights is in the children's best interests.

## CONCLUSION

Because the State proved a statutory ground for termination under § 43-292 and that termination of Maria's parental rights is in the best interests of Anthony and Dakota, we affirm the juvenile court's order terminating Maria's parental rights.

AFFIRMED.