IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


IN RE INTEREST OF LATRELL K. ET AL.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


IN RE INTEREST OF LATRELL K. ET AL.,
CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

HEATHER J., APPELLANT.


Filed November 5, 2019.    No. A-19-217.


Appeal from the Separate Juvenile Court of Douglas County: CHRISTOPHER E. KELLY, Judge. Affirmed.

Susanne M. Dempsey Cook for appellant.

Donald W. Kleine, Douglas County Attorney, and Natalie Killion for appellee.


RIEDMANN, BISHOP, and ARTERBURN, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Heather J. appeals from the decision of the separate juvenile court of Douglas County terminating her parental rights to her four children. We affirm.

## II. BACKGROUND

### 1. PROCEDURAL BACKGROUND

Heather is the biological mother of Latrell K. (born 2005), Emeliano J. (born 2012), Izzik J. (born 2014), and Giovonni J. (born 2017). Our record contains little to no information about the

- 1 -

father(s) of the children. Because the children's father(s) were not part of the juvenile proceedings below and are not part of this appeal, we will not further discuss the father(s) in this opinion.

In March 2017, the State filed a juvenile petition alleging that Latrell (11 years old at the time) was a child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016), through no fault of Heather. The State alleged that: Latrell did not attend school 20 days during the 2016-17 school year; he refused to attend school and cooperate with school authorities; despite Heather's cooperation with the school, he continued to miss school; and for the above reasons, he was at risk of harm. Also in March, the juvenile court granted the State's ex parte motion for temporary custody of Latrell, although he remained placed in Heather's home. In May, Latrell was adjudicated to be within the meaning of § 43-247(3)(a) based on Heather's admission to the allegations in the petition. The matter proceeded to immediate disposition and Latrell was ordered to undergo a "bio-psycho-social assessment." Heather was ordered to undergo an initial diagnostic interview, participate in and successfully complete a parenting course, cooperate with family support worker services, and participate in and successfully complete family therapy.

A continued disposition, evaluation, and permanency planning hearing was held in July 2017, but Heather failed to appear. The juvenile court's order states that Heather had not been in contact with the case manager and had not complied with any of the court orders to date. The permanency objective was family preservation, and the court found it was in Latrell's best interests to remain in the care and custody of the Nebraska Department of Health and Human Services (DHHS)/Nebraska Families Collaborative (NFC) for continued appropriate care and placement, to include Heather's home.

On August 28, 2017, the State filed a supplemental petition alleging that Latrell, Emeliano, Izzik, and Giovonni were children within the meaning of § 43-247(3)(a), in that they lacked proper parental care by reason of the fault or habits of Heather. The State alleged that: Heather failed to provide proper parental care, support, and/or supervision for the children; Heather's use of alcohol and/or controlled substances placed the children at risk for harm; and for the above reasons, the children were at risk of harm. That same day, the juvenile court granted the State's ex parte motion for temporary custody of the children and ordered that placement should exclude Heather's home; the children have remained out-of-home ever since. In September, Latrell, Emeliano, Izzik, and Giovonni were adjudicated to be within the meaning of § 43-247(3)(a) based on Heather's admission to the allegation that her use of alcohol and/or controlled substances placed the children at risk for harm. The matter proceeded to immediate disposition and Heather was ordered to undergo a bio-psycho-social assessment (formerly an initial diagnostic interview), undergo a chemical dependency evaluation, submit to random drug and alcohol testing, and participate in and successfully complete a parenting course. She was also granted reasonable rights of agency-supervised visitation.

A continued disposition and review and permanency planning hearing was held in November 2017. Heather was ordered to participate in and successfully complete a "Level 3.5 Clinically Managed High Intensity Residential Therapy Program" and all recommended aftercare, work with NFC case management and attend scheduled meetings, undergo a bio-psycho-social assessment, cooperate with family support worker services, and submit to random drug and alcohol testing. Another review and permanency planning hearing was held in May 2018, but Heather's court-ordered requirements remained the same. And after a review and permanency planning

hearing in November, Heather was ordered to submit to random drug and alcohol testing, participate in and successfully complete "Level III.5" and "Level III" treatment, continue to work with PromiseShip and attend all scheduled meetings, complete either a bio-psycho-social assessment or a psychological evaluation with parenting assessment, and participate in and successfully complete a parenting education course.

On December 3, 2018, the State filed a motion to terminate Heather's parental rights to Latrell, Emeliano, Izzik, and Giovonni pursuant to Neb. Rev. Stat. § 43-292(2), (6), and (7) (Reissue 2016). The State alleged that Heather substantially and continuously or repeatedly neglected and refused to give the children, or a sibling, necessary care and protection; reasonable efforts to preserve and reunify the family had failed to correct the conditions leading to the adjudication of the children under § 43-247(3)(a); the children had been in an out-of-home placement for 15 or more of the most recent 22 months; and termination was in the children's best interests.

## 2. TERMINATION HEARING

The hearing on the motion to terminate Heather's parental rights was held on February 8, 2019. The State called several witnesses to testify, and numerous exhibits were received into evidence. Heather did not testify. A summary of the relevant evidence follows.

Dawn Morgan-Baker is a family permanency specialist with PromiseShip, and has been the caseworker on this case since February 2018. Morgan-Baker testified that she reviews all case files assigned to her. Additionally, when Morgan-Baker took over this case, she "staff[ed]" the case with the previous caseworker and their supervisor. During the staffing, they discussed the court orders, services being provided, placement locations of the children, needs of the mother and the children, and barriers to services.

Morgan-Baker stated that this case originally came in for educational neglect in February or March 2017, and then in August of that year, the children were removed due to neglect. Morgan-Baker was in contact with Heather "at least weekly" and met her face-to-face "every two to three months," although she attempted to set up face-to-face meetings once or twice a month.

Heather's progress on court-ordered services was addressed.

### (a) Drug Use

#### (i) Criminal Case

Exhibit 24 is a certified copy of a criminal case against Heather in the county court for Douglas County; it was received into evidence over Heather's relevancy objection. The November 2017 criminal complaint charged Heather with seven offenses alleged to have occurred that month, including driving during suspension and possession of marijuana (1 ounce or less). Pursuant to a plea agreement, Heather pled no contest to driving during suspension and possession of marijuana (1 ounce or less), and the other five offenses were dismissed on the motion of the prosecutor. Heather was sentenced to 5 days in jail for the driving during suspension conviction, and was fined $300 for the possession of marijuana conviction.

*(ii) Drug Testing and Treatment*

According to Morgan-Baker, in September 2017, the juvenile court ordered Heather to submit to random and frequent drug testing, and PromiseShip sent a referral to Owens & Associates.

Sarah Valentine, the supervisor of the drug testing department at Owens & Associates, testified that Heather was referred for drug testing services in September 2017, but was unsuccessfully discharged from services on December 19, 2017, because there had been a period of 30 days or more when Heather did not test. Heather was re-referred for services in January 2019.

Exhibit 27 is the court report Valentine authored regarding Heather; it was received into evidence over Heather's foundation and hearsay objections. Exhibit 27 shows that from September 2 to December 17, 2017, there were 47 attempts to drug test Heather, but she only completed 12 tests, and 11 of those tests were presumptive positive for marijuana (for 5 of those presumptive positive tests, the notations in the report state that Heather admitted to recent marijuana use). As noted above, Heather was unsuccessfully discharged from drug testing services on December 19, 2017, and was later re-referred for services in January 2019. From January 20 to February 2, there were three or four attempts to drug test Heather, but she only completed one test, and that test was presumptive positive for marijuana (the notation in the report states that Heather admitted to using marijuana the day before). Accordingly, exhibit 27 shows that there were a total of 51 attempts to drug test Heather, but she only tested 13 times, and 12 of those tests were presumptive positive for marijuana.

Morgan-Baker testified that PromiseShip views missed drug tests as "[p]resumtive positive." It concerned Morgan-Baker that Heather missed drug tests because "drug tests are used to assist in proving sobriety, so without the drug test coming back, we have no idea whether or not she's using, and we have to assume that she is."

Morgan-Baker stated that after Heather was unsuccessfully discharged from drug testing services in December 2017, there was no new referral made at that point because Owens & Associates would have required Heather to call in every day to see if she was on the list to test; Heather did not have a phone for some time, so PromiseShip knew it would be a challenge for Heather to call every day. Additionally, Heather had openly admitted to using marijuana on a couple of occasions during 2018, so a higher emphasis was placed on trying to get her into treatment "rather than . . . continuously referring services that were going to be unsuccessfully discharged." "[Heather] did say on [sic] one meeting in 2018 that she may as well not test because it was going to be positive for marijuana." The only drug testing services provided to Heather from December 2017 to December 2018 were while she was in treatment at NOVA Treatment Community or CenterPointe.

Morgan-Baker stated that in November 2017, Heather was court-ordered to complete Level 3.5 treatment. Heather subsequently enrolled in Level 3.5 drug treatment at NOVA Treatment Community, but was unsuccessfully discharged in April 2018 after engaging in a physical altercation with another client. Heather later enrolled in Level 3.5 treatment at CenterPointe, but was unsuccessfully discharged after she was found to be using marijuana on treatment grounds. Morgan-Baker was able to re-refer Heather for treatment at CenterPointe that September, but an updated chemical dependency evaluation was needed; Heather completed the updated evaluation

in January 2019 (after failing to appear twice) and was on the waiting list at CenterPointe at the time of the termination hearing. As of the time of the termination hearing, Heather had not completed any Level 3.5 treatment; she had also failed to complete Level 3 treatment (which was court-ordered in November 2018, and was to follow the Level 3.5 treatment). Heather's failure to complete drug treatment was concerning to Morgan-Baker because "[t]he case was adjudicated on drug use, so the fact that we have not been able to address the drug use is very concerning for the safety of the children."

### (b) Visitation

Renee Steinhoff has been the director of in-home services at Beneficial Behavioral Health Services (Beneficial) since January 2018, and prior to that, she was a lead supervisor there. Beneficial provided supervised visitation and family support for Heather. Visitation services began on August 31, 2017, and have always been supervised. Steinhoff believed that Heather was initially scheduled to have visitation five times per week; Morgan-Baker said there were originally four visits scheduled per week. However, Steinhoff stated that Heather's attendance "kind of depended on the month." "There were months where she attended every visit," and "[t]here were months that we couldn't reach her." Because of her inconsistency, Heather's visits were decreased to three times per week "a while back." (Morgan-Baker testified that the visits were reduced in November 2017.) According to Steinhoff, Heather was "typically[] late for most visits." Beneficial was still providing visitation services to Heather at the time of the termination hearing. Exhibit 22 is a document from Beneficial listing all of the dates visits were scheduled from August 2017 through January 2019, and whether or not Heather attended; it was received into evidence over Heather's timeliness objection.

The children's foster mother testified that when the children returned from visits with Heather they were "less focused" and "hard to redirect." Heather had also called to speak with the children. When asked how the children behaved when they were talking on the telephone with Heather, the foster mother responded, "[T]hey're just at an age where the engagement is very limited. They're not very engaged in the conversation, . . . they're short conversations." The foster mother stated that during Latrell's telephone conversations with Heather, there was a lot of "volatileness or animosity" coming from Latrell.

Morgan-Baker testified that ever since the children were removed in August 2017, Heather has always had agency-supervised visitation. Throughout the life of the case, Heather has participated in 68 percent of her visits. The missed visits were generally either because Heather was a "[n]o-show[]" or Heather showed up too late for the visits to occur; "for example, [Heather] showed up 20 minutes after the visit, and the visitation workers are only contracted to wait for 15." And Heather "is consistently late for visits, even if she arrives within that first 15 minutes." The missed visits are concerning because there "is obviously a strain on the children because they're at the visit and expecting their parent and then [are] being taken back home." The children's foster mother testified that the children were "upset" when visits were cancelled.

### (c) Parenting Class and Family Support

Once assigned to this case, Morgan-Baker let Heather know about the different ways she could get her court-ordered parenting class completed; they decided that one-on-one family

support would be best, and Heather was referred for services. However, to Morgan-Baker's knowledge, Heather has not completed a parenting class.

Morgan-Baker stated that Heather was court-ordered to work with a family support worker on parenting education, income, and housing. Heather met with the NOVA worker twice and the APEX worker once, but she never met with the workers from Boys Town or Beneficial. Steinhoff testified that Beneficial received the referral for family support services on September 28, 2018. The assigned worker attempted to contact Heather "[o]n a daily to weekly basis," was able to get ahold of Heather about four times, but was never successful in meeting with her; Heather would set up a meeting and then cancel. Heather was unsuccessfully discharged from family support services with Beneficial on January 22, 2019, for lack of engagement. According to Morgan-Baker, Heather was unsuccessfully discharged from NOVA, Boys Town, and Beneficial for lack of participation. Morgan-Baker had not been able to verify Heather's housing situation; Heather told her that she stays with random friends. Morgan-Baker stated that "[t]he children need a stable place to reside." Heather had also reported employment, but Morgan-Baker had not been able to verify that employment.

### (d) Best Interests

According to Morgan-Baker, Heather "hasn't alleviated the issues that brought this case into care." Morgan-Baker opined that it was in the children's best interests to terminate Heather's parental rights because the children "deserve timely permanency."

### 3. JUVENILE COURT'S DECISION

In an order filed on February 11, 2019, the juvenile court terminated Heather's parental rights to Latrell, Emeliano, Izzik, and Giovonni after finding by clear and convincing evidence that statutory grounds for termination existed pursuant to § 43-292(2), (6), and (7), and that termination of her parental rights was in the children's best interests.

Heather appeals the juvenile court's order.

## III. ASSIGNMENTS OF ERROR

Heather assigns that the juvenile court violated her due process rights and erred in terminating her parental rights.

## IV. STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings. *In re Interest of Isabel P. et al.*, 293 Neb. 62, 875 N.W.2d 848 (2016).

## V. ANALYSIS

### 1. DUE PROCESS/ADMISSION OF EXHIBITS

Heather claims the juvenile court erred in admitting certain exhibits into evidence at the termination hearing. As acknowledged by Heather, the Nebraska Evidence Rules do not apply in cases involving the termination of parental rights. *In re Interest of Destiny A. et al.*, 274 Neb. 713, 742 N.W.2d 758 (2007). Instead, due process controls and requires that the State use

fundamentally fair procedures before a court terminates parental rights. *Id*. In determining whether admission or exclusion of particular evidence would violate fundamental due process, the Nebraska Evidence Rules serve as a guidepost. *Id*.

We address each of the three challenged exhibits in turn.

### (a) Exhibit 22 - Visitation Reports

Steinhoff testified that exhibit 22 is "a list of all of the visits Heather had and if she did or did not attend." Heather's counsel objected to the exhibit stating, "I didn't receive this until this morning and have not had an opportunity to verify the information contained in that report. I don't think it was timely provided to [Heather]." The juvenile court overruled the objection and received the exhibit before the State could respond.

In her brief, Heather argues that "[t]o provide such an exhibit to [her] mere moments before the hearing . . . put[] [her] at a disadvantage in a hearing where one of her most important Constitutional Rights [was] at stake." Brief for appellant at 9. In response, the State asserts that it also received the summary report the same morning of the hearing, and that it "promptly sent it to defense counsel a mere two minutes after receiving the document" from Steinhoff. Brief for appellee at 20. The State further contends that "[t]he full visitation reports were sent to defense counsel . . . over one week before the termination hearing." *Id*. We note that the State's claims were not set forth in the record below, however, as noted above, the court ruled on the exhibit before the State could respond to Heather's timeliness objection.

Under the circumstances, we do not find that the admission of this exhibit was improper. Regardless, Heather cannot show she was prejudiced by the exhibit because Morgan-Baker testified, without objection, that "[t]hroughout the life of the case, Heather has participated in 68 percent of her visits"; a similar percentage could be extrapolated from exhibit 22. See *In re Interest of Ty M. & Devon M.*, 265 Neb. 150, 655 N.W.2d 672 (2003) (improper admission of evidence by juvenile court in parental rights termination proceeding does not, in and of itself, constitute reversible error; showing of prejudice must be made).

### (b) Exhibit 24 - Criminal Complaint

As stated previously, exhibit 24 shows that in November 2017, Heather entered into a plea agreement whereby she pled no contest to driving during suspension and possession of marijuana (1 ounce or less), and had five other offenses dismissed on the motion of the prosecutor. Heather was sentenced to 5 days in jail for the driving during suspension conviction, and was fined $300 for the possession of marijuana conviction.

The juvenile court received exhibit 24 at the termination hearing over Heather's relevancy objection. In her brief on appeal, Heather argues that "[t]he State was not able to show any nexus between the criminal complaint and the children involved in this matter," and thus the exhibit should not have been admitted into evidence. Brief for appellant at 8. We disagree. As noted by the State, "One of the issues that brought this case into care was [Heather's] drug use, and that problem has remained and persisted." Brief for appellee at 19. Additionally, the charging complaint to which she pled states that the offenses were committed in November 2017; the children had been removed from Heather that August and she was to be having supervised visitation with the children several days per week. Heather's 5-day jail sentence would have

impacted her visitation with the children (and this is confirmed in exhibit 22, which reflects she missed three visits in November because she was in jail). Accordingly, there was a nexus between the criminal complaint and the children, and it was therefore relevant to the termination hearing. Heather's due process rights were not violated by the receipt of the exhibit into evidence.

### (c) Exhibit 27 - Drug Screens

Exhibit 27 is a list of all drug screens provided by Owens & Associates to Heather in this case. The juvenile court received the exhibit over Heather's foundation and hearsay objection. In her brief, Heather contends that "[i]t was erroneous of the Court to admit this evidence as proof of failed drug screens" because "[e]xhibit 27 shows only presumptive positive drug screens," and "does not contain information about whether or not those screens were actually positive via laboratory confirmation." Brief for appellant at 9. "Because the exhibit does not include laboratory confirmation results, [e]xhibit 27 contains hearsay information [because it 'purports to prove tests were positive'] and additionally is not relevant." *Id*. The State responds by noting that strict rules of evidence do not apply and stating that the exhibit "is both material and probative to the broad concerns of the issue facing the juvenile court, namely, the best interest[s] of the minor children." Brief for appellee at 20.

Heather's argument focuses solely on the presumptive positive test results. We do not find that the admission of the presumptive positive results violated her due process rights, for the same reasons noted by the State. However, we note that even if we excluded the 12 "presumptive positive" notations in exhibit 27, Heather does not challenge the portions of the exhibit that show on five of those occasions, she admitted to recent marijuana use. Nor does she challenge the fact the exhibit reveals that of the 51 attempts to drug test her, she only completed testing 13 times.

### 2. STATUTORY GROUNDS FOR TERMINATION

In Nebraska statutes, the bases for termination of parental rights are codified in § 43-292. Section 43-292 provides 11 separate conditions, any one of which can serve as the basis for the termination of parental rights when coupled with evidence that termination is in the best interests of the child. *In re Interest of Elizabeth S.*, 282 Neb. 1015, 809 N.W.2d 495 (2012).

In its order terminating Heather's parental rights to Latrell, Emeliano, Izzik, and Giovonni, the juvenile court found that statutory grounds existed pursuant to § 43-292(2) (substantial and continuous or repeated neglect); (6) (having determined child was a juvenile as described in § 43-247(3)(a), reasonable efforts to preserve and reunify the family had failed to correct conditions leading to determination); and (7) (child out-of-home for 15 or more months of the most recent 22 months).

Latrell, Emeliano, Izzik, and Giovonni have been in an out-of-home placement since August 28, 2017. At the time the motion to terminate Heather's parental rights was filed on December 3, 2018, the children had been in an out-of-home placement for 15 months. And at the time of the termination hearing on February 8, 2019, they had been in an out-of-home placement for 17 months. Our de novo review of the record clearly and convincingly shows that grounds for termination of Heather's parental rights under § 43-292(7) were proven by sufficient evidence.

We need not consider whether termination of Heather's parental rights was proper pursuant to § 43-292(2) or (6), since any one ground of the 11 identified in § 43-292 can serve as the basis

for the termination of parental rights when coupled with evidence that termination is in the best interests of the children. See *In re Interest of Elizabeth S., supra*. Thus, the next inquiry is whether termination is in the children's best interests.

### 3. BEST INTERESTS AND UNFITNESS

Under § 43-292, once the State shows that statutory grounds for termination of parental rights exist, the State must then show that termination is in the best interests of the child. *In re Interest of Ryder J.*, 283 Neb. 318, 809 N.W.2d 255 (2012). But that is not all. A parent's right to raise his or her child is constitutionally protected; so before a court may terminate parental rights, the State must also show that the parent is unfit. *In re Interest of Nicole M.*, 287 Neb. 685, 844 N.W.2d 65 (2014).

There is a rebuttable presumption that the best interests of a child are served by having a relationship with his or her parent. *Id*. Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the State has proved that a parent is unfit. *Id*. The term "unfitness" is not expressly used in § 43-292, but the concept is generally encompassed by the fault and neglect subsections of that statute, and also through a determination of the children's best interests. *In re Interest of Nicole M., supra*. Parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to a child's well-being. *Id*. The best interests analysis and the parental fitness analysis are fact-intensive inquiries. *Id*. And while both are separate inquiries, each examines essentially the same underlying facts as the other. *Id*.

The children were removed from Heather in August 2017, and in September, the children were adjudicated based on Heather's admission that her use of alcohol and/or controlled substances placed the children at risk for harm. Since that time, she was court-ordered to submit to random drug and alcohol testing, participate in and successfully complete "Level III.5" and "Level III" treatment, participate in and successfully complete a parenting course, and cooperate with family support worker services. She did not successfully complete any of those court-ordered requirements. She completed only 13 of the 51 attempts to drug test her; and during 5 of those tests she admitted to recent marijuana use. She was unsuccessfully discharged from two different Level 3.5 drug treatment facilities; one for engaging in a physical altercation with another client, and the second for using marijuana on treatment grounds. Because she had not yet completed Level 3.5 treatment, she had also not completed Level 3 treatment. Additionally, Heather had not completed a parenting class. And she was unsuccessfully discharged from three different family support providers for lack of participation. According to Morgan-Baker, Heather "hasn't alleviated the issues that brought this case into care." Morgan-Baker testified that "[t]hroughout the life of the case, Heather has participated in 68 percent of her visits," and even when she does attend, she is consistently late.

Heather's noncompliance with even the most basic of the court orders is problematic. In particular, her failure to cooperate with family support has inhibited her ability to work on parenting education, housing, and income. Heather reported staying with random friends. And as Morgan-Baker stated, "The children need a stable place to reside." And although Heather reported employment, Morgan-Baker had not been able to verify that employment. In addition to needing

to be able to provide a home and support for her children, Heather needs to be a source of stability and consistency for her children. However, as noted above, her attendance and timeliness at visitation is lacking. And her visitation has at all times remained supervised.

At the time of the termination hearing, the children had been in an out-of-home placement for 17 months, and she had made little to no progress. Morgan-Baker opined that it was in the children's best interests to terminate Heather's parental rights because the children "deserve timely permanency." We agree. The children deserve permanency and a safe and stable home. Heather has clearly failed to make her children her priority, and her noncompliance has served as a barrier to reunification. Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *In re Interest of Walter W.*, 274 Neb. 859, 744 N.W.2d 55 (2008). Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of the parental rights. *In re Interest of Ryder J., supra*. We find that the State has rebutted the presumption of parental fitness as to Heather. We further find that there is clear and convincing evidence that it is in the children's best interests to terminate Heather's parental rights.

## VI. CONCLUSION

For the reasons stated above, we affirm the order of the juvenile court terminating Heather's parental rights to Latrell, Emeliano, Izzik, and Giovonni.

AFFIRMED.