IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF KEISHA G.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF KEISHA G., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE, AND TANYA J. HANSEN AND TIMOTHY G. HRUZA,
GUARDIANS AD LITEM, APPELLEES AND CROSS APPELLANTS,

V.

MICHAEL G., APPELLANT AND CROSS-APPELLEE.

Filed April 28, 2015.    No. A-14-942.

Appeal from the County Court for Hall County: ARTHUR S. WETZEL, Judge. Affirmed.

Jerry Fogarty for appellant.

Megan Alexander, Deputy Hall County Attorney, for appellee State of Nebraska.

Tanya J. Hansen and Timothy G. Hruza, of Leininger, Smith, Johnson, Baack, Placzek & Allen, guardians ad litem.

IRWIN, INBODY, and RIEDMANN, Judges.

RIEDMANN, Judge.

INTRODUCTION

Michael G. appeals the order of the county court for Hall County, sitting as a juvenile court, which terminated his parental rights to his minor child, Keisha G. Michael argues that the court erred in finding that the formal rules of evidence do not apply and overruling his objections to certain evidence, and in finding clear and convincing evidence to support termination under subsections (2) and (7) of Neb. Rev. Stat. § 43-292 (Cum. Supp. 2014).

- 1 -

The guardians ad litem cross-appeal, arguing that the juvenile court erred in failing to find sufficient evidence to warrant terminating Michael's parental rights pursuant to § 43-292(4). Based upon our de novo review of the record, we affirm.

BACKGROUND

Michael is the biological father of Keisha, born in October 2010. Keisha was removed from her mother's care in September 2011. Keisha's mother ultimately relinquished her parental rights to Keisha, and thus, any further discussion of her will be limited to information necessary to address Michael's arguments.

This case comes before us for the second time. Keisha was adjudicated under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008) in February 2012, and the juvenile court terminated Michael's parental rights to Keisha under Neb. Rev. Stat. § 43-292(4) and (6) in November. Michael appealed to this court, and we held that he had not been properly advised of his rights at the adjudication hearing. See *In re Interest of Keisha G.*, 21 Neb. App. 474, 840 N.W.2d 562 (2014). Because the adjudication was deficient, we treated it as the equivalent of no prior adjudication. See *id*. We therefore concluded that due to the lack of a proper adjudication, termination could not be accomplished under § 43-292(6). We further concluded that the evidence was insufficient to support termination under § 43-292(4), and therefore reversed the juvenile court's decision. The mandate was entered in the juvenile court on January 16, 2014.

The State and guardians ad litem filed a new joint motion to terminate Michael's parental rights on March 7, 2014. In the motion, the State and guardians ad litem alleged that termination of Michael's parental rights was warranted pursuant to § 43-292(2), (4), and (7) and that termination of Michael's parental rights was in Keisha's best interests.

Prior to the termination hearing, the State and guardians ad litem filed a joint motion to allow the use of deposition testimony at trial in lieu of live testimony for witnesses beyond the subpoena power of the court. Michael objected on the basis of due process and the right of confrontation because the trier of fact would not have the opportunity to observe the witnesses. The court granted the motion to use depositions, so long as Michael was present during the taking of the depositions. It found that it would not offend due process or Michael's right of confrontation because he would be present with counsel and permitted to cross-examine the witnesses.

The termination hearing was held over the course of several days in September 2014. The evidence revealed that Michael has an extensive criminal history, including numerous periods of incarceration. He was incarcerated at the time Keisha was removed from her mother's care and was released in January 2012. After that time, he continued to have run-ins with law enforcement despite his knowledge that Keisha was a state ward. He did not appear at the first termination hearing because he had an active warrant out for his arrest. He was arrested thereafter and served a period of incarceration.

At the time the second termination hearing was held, Michael was incarcerated again serving a sentence of 12 to 20 years for an armed robbery conviction. We note, however, that he appealed the conviction, and therefore, it is not yet a final order. Although a number of Michael's convictions occurred before Keisha's birth, he accumulated numerous convictions during her lifetime as well. The record indicates that since Keisha was born, in addition to the offenses already discussed, Michael has been convicted of driving during revocation (twice), trespassing, theft of

services, procuring alcohol for a minor, attempted possession of a controlled substance (Vicodin), driving under suspension, possession of marijuana, possession of drug paraphernalia, disturbing the peace, forgery, and theft.

Michael also has a history of drug and alcohol abuse. He first tried marijuana when he was 13 years old and started using it on a regular basis when he was 15 or 16. He began using methamphetamine at age 18. Keisha's mother testified that when she was pregnant with Keisha, Michael supplied her with methamphetamine at least once per week, and they would use it together. Michael entered a 28-day drug and alcohol treatment program in August 2012. At the time, he reported that he was a daily marijuana user and typically used a minimum of 3 or 4 times per day. He also reported that he last used methamphetamine less than two weeks prior to entering the program and generally uses at least 2 to 3 times per week. He only remained in the program for 6 days, however, before checking himself out. He never sought further drug or alcohol treatment.

Michael currently has 3 other children with 3 different mothers: 2 sons, ages 6 and 7; and a daughter, age 2 months. He does not provide regular financial support for any of his other children nor does he have consistent contact with them. The last time he saw his sons was in the spring of 2013.

After Michael was released from incarceration in January 2012, he began receiving visitation with Keisha on March 1. During the first visit, Keisha screamed and cried hysterically and acted like she was afraid of Michael. She would not let him come near her, feed her, or change her diaper. Keisha's reaction to Michael improved over time, however, and she would allow him to read to her and play with her. One of the visitation supervisors testified that Michael was very fun and willing to do whatever was necessary at the visits to foster his relationship with Keisha. He would also bring gifts for her to the visits, get down on her level to talk to her, and continue to try to get her to sit with him. Michael began to build a relationship with Keisha, but he was inconsistent in attending visits with her, which hindered their ability to develop a bond. Of the 76 visits scheduled between March and October 2012, Michael only attended 38 of them, despite being provided transportation for all visits.

Additionally, during the pendency of this case, Michael never obtained stable employment or a stable residence. At the termination hearing, he described his living arrangements when not incarcerated as staying with various friends or family members and said that he has never had a residence in his name since Keisha was born. He admitted that he has never been the sole caretaker for Keisha for 24 hours, and his last visit with her was on October 9, 2012.

Keisha has lived in the same foster home since February 2012. She is placed with her half-brother, Kane, and they have a very close relationship. Keisha's foster father testified that if Keisha and Kane were separated, they would both be lost because they have been the constant in each other's lives. According to Keisha and Kane's mother, the siblings have always been inseparable, and she believes Keisha would be devastated to be separated from Kane. Keisha is thriving in her current placement, she has no health or developmental concerns, and according to the case plan report, she appears to be a very healthy, happy, and content child. The case manager who was assigned to this case from April 2012 through October 2012 testified that it would be in Keisha's best interests to be in a permanent, stable, and nurturing environment that would provide for her safety and well-being, and Michael is not able to provide that for her at this time.

After all evidence had been presented at the termination hearing, the court orally pronounced its findings. It iterated that Michael has provided no financial support or emotional support for Keisha, and has never even parented her overnight. Further, the court pointed out that Michael has been inconsistent with employment and housing, and he has been unavailable to carry out his responsibilities because of incarceration. The court noted that Michael suffers from drug and alcohol abuse, and he was offered services to help him in areas in which he was deficient including visitation, transportation, parenting classes, domestic violence classes, family support, treatment, and psychological evaluations, all to no avail. The court additionally pointed out that Michael has had very limited contact with his other children and has provided no support for them. Accordingly, the court found that the State and guardians ad litem had presented clear and convincing evidence to satisfy subsection (2) of Neb. Rev. Stat. § 43-292 (Cum. Supp. 2014). The court also found that § 43-292(7) had been satisfied because Keisha has been in an out-of-home placement for 15 or more of the most recent 22 months. However, the juvenile court determined that there was insufficient evidence to warrant termination under § 43-292(4) because the State and guardians ad litem failed to prove the sufficient nexus between Michael's drug abuse and his ability to parent Keisha.

The court then addressed whether terminating Michael's parental rights would be in Keisha's best interests. The court believed that Michael placed his own interests ahead of Keisha's interests. Although there was believed to be a bond forming, the court found that it was not capable of being formed because of the inconsistency with visits. The court pointed out that Keisha is thriving in the foster home, and she is receiving the stability in her life that has been lacking. The court was mindful of that fact that Michael is currently serving a lengthy prison term, but recognized that it is not yet a final order. However, the court was unable to ignore Michael's history and the fact that he has shown a repeated and habitual mentality that places him in confinement and has not shown an indication that that mentality will change. Further, it was pointed out that Michael lacks an adequate job, housing, and financial resources to care for a child. Additionally, the court mentioned the bond that Keisha has with Kane and believed that that bond is important for her continued development. Ultimately, the court believed this to be a case where Keisha should not be required to remain in limbo in foster care while she awaits her parent's maturity. Therefore, the juvenile court determined that it would be in Keisha's best interests to terminate Michael's parental rights. Michael timely appeals to this court.

## ASSIGNMENTS OF ERROR

Michael assigns that the juvenile court erred in (1) finding that the formal rules of evidence did not apply and overruling his objections to evidence, and (2) finding clear and convincing evidence to support termination of his parental rights under subsections (2) and (7) of § 43-292.

On cross-appeal, the guardians ad litem assigns that the juvenile court erred in finding insufficient evidence to support termination under subsection (4) of § 43-292.

## STANDARD OF REVIEW

Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. *In re Interest of Karlie D.,* 283 Neb. 581, 811 N.W.2d 214 (2012). However, when the evidence is in conflict, an appellate court

may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over the other. *Id.*

## ANALYSIS

*Applicability of Rules of Evidence.*

Michael argues that because there was no adjudication prior to the termination hearing, the termination hearing was adjudicatory, rather than dispositional in nature, and therefore, the formal rules of evidence should apply. He specifically challenges the court's decision to receive the depositions into evidence over his objections and asserts that his confrontation rights were violated. We find no merit to Michael's arguments.

Terminating Michael's parental rights without prior adjudication is permissible under Neb. Rev. Stat. § 43-291 (Reissue 2008), which provides that an original petition may be filed seeking termination of parental rights. The Nebraska Supreme Court has determined that the grounds contained in Neb. Rev. Stat. § 43-292(1) through (5) (Cum. Supp. 2014) do not "require, imply, or contemplate juvenile court involvement, including adjudication, prior to the filing of the petition for termination of parental rights." *In re Interest of Joshua M. et al.*, 256 Neb. 596, 609, 591 N.W.2d 557, 566 (1999).

Because a prior adjudication is not required, we do not consider a hearing upon an original petition to terminate parental rights to be adjudicatory in nature. The purpose of the adjudication phase of a juvenile proceeding is to protect the interests of the child. The parents' rights are determined at the dispositional phase, not at the adjudication phase. *In re Interest of Brian B.*, 268 Neb. 870, 689 N.W.2d 184 (2004). Thus, whether adjudication occurred or not, termination hearings are considered dispositional because the parents' rights are at issue.

The Nebraska Evidence Rules do not apply in cases involving the termination of parental rights. *In re Destiny A.*, 274 Neb. 713, 742 N.W.2d 758 (2007). We find no authority, and Michael has cited none, distinguishing the evidentiary rules that apply at termination hearings after adjudication from those that apply in an original action to terminate a parent's rights.

Although the formal evidence rules do not apply at termination hearings, due process controls and requires that the State use fundamentally fair procedures before a court terminates parental rights. *Id.* Further, because this is a juvenile proceeding and not a criminal case, the heightened standards of the Confrontation Clause are not applicable. See *In re Interest of Brian B., supra*. In deciding due process requirements in a particular case, we must weigh the interest of the parent, the interest of the State, and the risk of erroneous decision given the procedures in use. *Id.* Due process is flexible and calls for such procedural protections as the particular situation demands. *Id.*

In *Brian B., supra*, the Supreme Court found that a father's due process rights were not violated when his minor child was allowed to testify in chambers at the adjudication hearing with the father positioned in a separate room where he could view the testimony on a computer screen as it was given. The Supreme Court determined that this procedure safeguarded the father's due process rights because, although the father was not allowed to personally confront the child during her testimony, his counsel did so during both her direct examination and cross-examination, the father was able to view the substance of the child's testimony in near real time, and he was able to confer with his counsel during the testimony.

Upon our de novo review of the record in the present case, we agree with the juvenile court that due process was not violated because Michael was present with counsel during the depositions and had a full opportunity to cross-examine each of the State's witnesses. Michael's argument focuses on the fact that the judge was not present when the depositions were taken; however, fundamental fairness does not require that the trier of fact view witness testimony live. Accordingly, we find no merit to Michael's arguments.

We further note that even without considering the evidence contained in the depositions, the evidence is sufficient to support termination of Michael's parental rights as discussed below.

*Statutory Grounds.*

Under Neb. Rev. Stat. § 43-292, in order to terminate parental rights, the State must prove, by clear and convincing evidence, that one or more of the statutory grounds listed in the section have been satisfied and that termination is in the child's best interests. *In re Interest of Nicole M.*, 287 Neb. 685, 844 N.W.2d 65 (2014). The bases for termination of parental rights are codified in § 43-292. *In re Interest of Sir Messiah T. et al*, 279 Neb. 900, 782 N.W.2d 320 (2010). Section 43-292 provides 11 separate conditions, any one of which can serve as the basis for the termination of parental rights when coupled with evidence that termination is in the best interests of the child. *Id.*

In its order terminating Michael's parental rights to Keisha, the juvenile court found that the State and guardians ad litem had proved two of the conditions contained in § 43-292 by clear and convincing evidence, namely subsections (2) and (7). Under subsection (2), the court may terminate the parental rights of a parent upon a showing by clear and convincing evidence that the parent has substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection. Parents may as surely neglect a child of whom they do not have possession by failing to put themselves in a position to acquire possession as by not properly caring for a child of whom they do have possession. *In re Interest of Louis S.*, 17 Neb. App. 867, 774 N.W.2d 416 (2009), *abrogated on other grounds, In re Interest of Zylena R.*, 284 Neb. 834, 825 N.W.2d 173 (2012). A parent's failure to provide an environment to which his or her children can return can establish neglect. *Id*. While incarceration alone does not provide grounds for termination of parental rights, it may be considered along with other factors in determining whether parental rights can be terminated based on neglect. See *In re Interest of Kalie W.*, 258 Neb. 46, 601 N.W.2d 753 (1999).

In the present case, we find clear and convincing evidence that Michael substantially and continuously neglected Keisha. He has been repeatedly incarcerated during Keisha's life, and although incarceration itself may be involuntary as far as a parent is concerned, the criminal conduct causing the incarceration is voluntary. See *In re Interest of Kalie W., supra*. From the time of his release in January 2012 until the first termination hearing in November 2012, Michael put forth only a minimal effort to build a relationship with Keisha and place himself in the position to parent her. He attended only half of the visits arranged for him, failed to follow through on addressing his drug and alcohol issues, and never obtained a stable residence or employment. Michael never provided financial support for Keisha and admitted that he has never parented her for 24 hours.

Further, § 43-292(2) allows for termination of parental rights when the parent has neglected a sibling of the juvenile. The evidence in this case establishes that Michael also neglected his two older children. He has never provided consistent financial support or purchased necessary items for the children and does not have an established relationship with either child beyond calling them for a few birthdays or holidays. His repeated periods of incarceration has hindered his ability to bond with Keisha's siblings as well, as has his lack of effort during times he was free.

Keisha has been in the same foster home since February 2012 and is thriving. She is extremely close to Kane, who has been a constant figure in her life. At the time of the termination hearing, Keisha was a month shy of her fourth birthday, and Michael was still unable or unwilling to place himself in a position to parent her. Children cannot, and should not, be suspended in foster care or made to await uncertain parental maturity. *In re Interest of Walter W.*, 274 Neb. 859, 744 N.W.2d 55 (2008). We therefore find that sufficient evidence was presented to terminate Michael's parental rights under § 43-292(2) and that terminating his rights would be in Keisha's best interests.

If an appellate court determines that the lower court correctly found that termination of parental rights is appropriate under one of the statutory grounds set forth in § 43-292, the appellate court need not further address the sufficiency of the evidence to support termination under any other statutory ground. *In re Interest of Justin H. et al.*, 18 Neb. App. 718, 791 N.W.2d 765 (2010). Therefore, this court need not address Michael's argument with respect to § 43-292(7) or the guardians ad litem's cross-appeal pertaining to § 43-292(4).

## CONCLUSION

We conclude that the juvenile court properly determined that the formal rules of evidence do not apply at termination hearings. Upon our de novo review of the record, we also find that the State and guardians ad litem presented clear and convincing evidence to prove statutory grounds for terminating Michael's parental rights under § 43-292(2) and that termination would be in Keisha's best interests. We therefore affirm.

AFFIRMED.