IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF ELIAS V. & ALIAH M.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF ELIAS V., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE AND CROSS-APPELLEE,

v.

LABRINA M., APPELLANT, AND FRANCISCO V., APPELLEE AND CROSS-APPELLANT.

IN RE INTEREST OF ALIAH M., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

v.

LABRINA M., APPELLANT.

Filed November 28, 2017.    Nos. A-17-453, A-17-454.

Appeal from the County Court for Platte County: FRANK J. SKORUPA, Judge. Affirmed.

Brandi J. Yosten, of Jarecki Yosten, P.C., L.L.O., for appellant.

Kaz C. Long, Deputy Platte County Public Defender, for appellee Francisco V.

Breanna D. Anderson, Deputy Platte County Attorney, for appellee State of Nebraska.

Jason Mielak, of Fehringer & Mielak, L.L.P., guardian ad litem.

- 1 -

P<span>IRTLE</span>, R<span>IEDMANN</span>, and A<span>RTERBURN</span>, Judges.

A<span>RTERBURN</span>, Judge.

## I. INTRODUCTION

Labrina M. appeals and Francisco V. cross-appeals from two separate orders of the Platte County Court, sitting in its capacity as a juvenile court. The county court's orders terminated Labrina's parental rights to two of her children: Elias V. and Aliah M. One of the court's orders also terminated Francisco's parental rights to Elias, a child he shares with Labrina. In their appeals, Labrina and Francisco both challenge the county court's finding that there was sufficient evidence presented to prove that termination of their parental rights is in the children's best interests. In his cross-appeal, Francisco also challenges certain evidentiary rulings made by the county court.

Upon our de novo review of the record, we affirm the decision of the county court to terminate Labrina's parental rights to Elias and Aliah and to terminate Francisco's parental rights to Elias.

## II. BACKGROUND

### 1. PARTIES

These juvenile court proceedings involve Elias, born in July 2013, and Aliah, born in February 2015. Labrina and Francisco are the biological parents of Elias. They also share another, younger, child. However, at the time of these juvenile court proceedings, that child was in the custody of the State of California and was, as a result, not a subject of the proceedings in the county court.

Labrina and Marquis R. are the biological parents of Aliah. Marquis' parental rights to Aliah were terminated in the juvenile court proceedings below. Marquis did not appeal from the juvenile court's decision and, as a result, he is not a party to this appeal.

### 2. PROCEDURAL HISTORY

In May 2015, three-month old Aliah was taken to the emergency room after Francisco called 911 and reported that Aliah was not breathing and had choked on milk. After Aliah arrived at the emergency room, doctors diagnosed her as suffering from a subdural hematoma with no external wound to her head or skull. Doctors believed that Aliah's injury was indicative of abuse. Because Francisco was Aliah's caregiver at the time she incurred her injury and because he provided police with inconsistent explanations as to how Aliah was hurt, he was arrested and charged with child abuse. Labrina did not believe that Francisco was responsible for Aliah's injury.

Shortly after Aliah was injured, both Elias and Aliah were placed in the temporary custody of the Department of Health and Human Services (the Department). Elias was placed in a foster home, while Aliah remained in the hospital. Eventually, when Aliah was released from both the hospital and a rehabilitation center, she was placed in the same foster home as Elias. Elias and Aliah have remained in their foster home for the duration of the juvenile court proceedings.

On June 5, 2015, the State filed two petitions in the county court. In the first petition, the State alleged that Elias was a child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 2014). Specifically, the petition alleged, relevant to Elias, that "there is significant instability

in Elias's life at this time" because Francisco had been charged with abusing Aliah; because Labrina did not believe that Francisco was responsible for Aliah's injury; because Labrina had a "significant history with Child Protective Services in California;" and because there was concern about the appropriateness of the home where Elias was currently residing. In the second petition, the State alleged that Aliah was a child within the meaning of § 43-247(3)(a) for the same reasons delineated above. In addition, the petition alleged that Labrina and Marquis did not have a good relationship and that they had both raised concerns about the other's ability to care for Aliah. The State also indicated that Labrina had not been entirely supportive of the care provided to Aliah by her doctors.

In September 2015, the State filed amended petitions. These petitions alleged the same facts as the original petitions, but also included additional facts. The additional facts included that Labrina did not have stable housing and that she had resumed her relationship with Marquis despite the history of domestic violence between them. Both Labrina and Francisco pled no contest to the allegations in the amended petitions. They were subsequently ordered to comply with a case plan designed to reunify the family.

On October 17, 2016, the State filed supplemental petitions. These petitions requested that Labrina's and Francisco's parental rights be terminated. Specifically, the petitions alleged that termination of Labrina's parental rights to both Elias and Aliah was warranted pursuant to Neb. Rev. Stat. § 43-292(2), (4), (5), (6), and (7) (Reissue 2016) and that termination of Francisco's parental rights to Elias was warranted pursuant to § 43-292(1), (2), (4), (6), (7), and (9). The petitions also alleged that termination of Labrina's and Francisco's parental rights was in the best interests of the children.

A hearing on the State's supplemental petitions requesting termination of Labrina's and Francisco's parental rights was held on April 11, 2017.

### 3. EVIDENCE PRESENTED AT TERMINATION HEARING

#### (a) Labrina

At the termination hearing, the State presented evidence to demonstrate that Labrina failed to make progress towards achieving reunification with Elias and Aliah, despite the efforts of the Department and despite the almost two years the case had been pending. Kathryn Wythers, the Department case worker assigned to the family's case at the time of the termination hearing, testified that while there were periods of time where Labrina would comply with certain case plan goals, she was simply unable to maintain any progress for the duration of the juvenile court proceedings.

Wythers testified that Labrina failed to maintain safe and stable housing for the duration of the juvenile court proceedings. She explained:

Throughout the life of the case, Labrina has been unable to maintain consistent housing. There's been periods of homelessness. She has been evicted from her apartment. She did rent a trailer here in town. She was able to obtain a Section 8 housing voucher and was even given an extension to obtain a place to live through that voucher; however, even with the extension, Labrina wasn't able to locate a place that she found suitable here in Columbus to rent for herself. Eventually, that voucher ran out and she ended up living [in]

various different homes with friends and [] did not give myself the address or location of where she was staying after the time that she left her trailer. And then, unbeknownst to myself, she moved to Lincoln this last weekend and I am not aware of where she is staying at this time.

Wythers also testified that Labrina failed to maintain consistent and reliable employment:

Her employment situation has been spotty. She has either been unemployed or held short-term employment at various places here in [Columbus]. She worked at Verizon for a short period of time, and then she wanted to go to school to become a CNA. She was advised when she did start that CNA program that her name is on the Central Registry, which would be an issue for her if she were to be trying to become a CNA, and she continued and she did complete that program, but was unable to find employment as a CNA with her name on the registry. She did then find a job at [another local business], but she reported that she quit that job because it was interfering with her ability to finish her degree as a CNA. And then, she did obtain a job at Sprint, which was my understanding that she had that job up until she moved to Lincoln.

Evidence presented at the termination hearing revealed that there were times during the pendency of the juvenile court proceedings that Labrina consistently attended scheduled visits with Elias and Aliah; however, there were also times where her attendance was inconsistent. In fact, at the time of the termination hearing on April 11, 2017, Labrina had not seen her children for approximately two weeks. During those two weeks, visits were scheduled, but Labrina failed to attend. Labrina also failed to consistently attend medical appointments for Aliah during the pendency of the proceedings. Wythers testified that Labrina's failure to attend these appointments hampered Labrina's ability to fully understand the extent of Aliah's injuries and resulting disability. There were concerns, particularly at the outset of the juvenile court proceedings, that Labrina was not capable of caring for Aliah given her injuries and limitations.

Labrina did complete some parenting classes. However, she failed to consistently attend appointments with her family support worker. At the time of the termination hearing, she had not participated with family support in 30 days. She also failed to consistently cooperate with drug testing after she tested positive for marijuana at the outset of the juvenile court proceedings.

Labrina continued to have contact with Francisco after he was released from jail on bond in December 2015 despite a no contact order and despite evidence that he had hurt Aliah. Labrina lied to Department workers about her relationship with Francisco, but they discovered the relationship when, in June 2016, Labrina was cited for false reporting after being pulled over by police when Francisco was in the car. In addition, Labrina became pregnant with Francisco's child after he was released on bond. In September 2016, Labrina and Francisco left Nebraska to go to California so that Labrina could deliver the baby there. Labrina did not tell her Department case worker that she was leaving the State. As a result of Labrina's actions, her visitations with Elias and Aliah returned to fully supervised due to safety concerns. In addition, Labrina and Francisco's youngest child is now in the custody of the state of California.

- 4 -

Labrina failed to participate in any individual therapy during the pendency of the juvenile court proceedings. It was originally recommended that she participate in this type of therapy in July 2015 when she completed a pretreatment assessment. This recommendation was renewed by Dr. John Meidlinger in January 2017 after Labrina participated in a psychological evaluation and parenting assessment. The results of these evaluations revealed that Labrina is self-centered and narcissistic and, as a result, there is a risk that she will put her own needs ahead of the needs of her children. Dr. Meidlinger observed "some deficiencies" in Labrina's bond with her children. He noted that at the time of conducting his evaluations, Labrina continued to express ambivalence about what had happened to Aliah. Dr. Meidlinger recommended that Labrina should demonstrate an "extended period of positive adjustment" of at least one year prior to having her children returned to her care and custody. In addition, although Dr. Meidlinger recommended that Labrina participate in individual therapy, he also testified that such therapy may not be successful because Labrina "can't tolerate the frustration of being imperfect." Dr. Meidlinger testified that if Labrina is unable to successfully complete some individual therapy, her children are at an increased risk in her care.

Wythers opined that it would be in Elias' and Aliah's best interests to terminate Labrina's parental rights because she is not capable of providing the children with permanency.

Labrina testified at the termination hearing and presented a conflicting view of her efforts toward achieving reunification and her ability to parent her children. Labrina testified that she was regularly employed at various jobs throughout the juvenile court proceedings. She indicated that she was currently trying to transfer her employment to a Sprint store in Lincoln or Omaha because she had recently moved from Columbus to Lincoln. However, she also admitted that at the time of the termination hearing she was unemployed. Labrina testified that she maintained housing throughout the duration of the proceedings, except for short periods of time when she lived with friends. She testified that in the days leading up to the termination hearing she had moved to Lincoln in order to be closer to her children and was staying with a friend. She indicated that she had found a one-bedroom apartment she was interested in, but had not finalized anything.

Labrina also testified that she consistently participated in family support and visitations with her children. She indicated that she regularly attended Aliah's weekly medical appointments and had taken steps to better understand Aliah's current condition. However, on cross-examination, she admitted that she had not attended any of Aliah's appointments since March 1, 2017. She also admitted that she hadn't completed any individual therapy even though she understood this had been a requirement and recommendation since July 2015. She explained that she was waiting to begin therapy until she earned more money so that she could see a particular therapist.

Labrina testified that she wants to regain custody of her children. She has a strong bond with her children and wishes to return to California with them so that she can be near her extended family.

(b) Francisco

At the termination hearing, the State presented evidence that in the first year and a half that the juvenile court proceedings were pending, Francisco did not cooperate with the Department's

efforts to reunify him with Elias and he did not have much, if any, contact with Elias. In May 2015, Francisco was arrested and charged with child abuse as a result of Aliah's injuries. Francisco remained in jail until he bonded out in December 2015. While in jail, he did not have any contact with the Department pursuant to the advice of his attorney. After he bonded out of jail, Francisco continued to avoid any contact with the Department. As a result of his actions, Francisco also did not have any contact with Elias.

Eventually, Francisco obtained new counsel who advised him to become involved in the juvenile court proceedings. The State offered evidence to demonstrate that beginning in October 2016, Francisco made attempts to become involved in his son's life again. Between October 2016 and December 2016, Francisco attended one team meeting regarding Elias. He also attended weekly visits with Elias. However, Francisco continued to refuse to participate in court ordered drug testing or to attend family support sessions. While Francisco was out of jail on bond, he continued to have contact with Labrina, despite the existence of a no contact order as a result of his pending criminal charges.

In December 2016, Francisco entered into a plea agreement concerning his child abuse charge. He ultimately pled no contest to three misdemeanor charges: negligent child abuse, false reporting, and attempted tampering with a witness. He was sentenced to a total of two years in jail. At the time of the termination hearing in April 2017, Francisco remained in jail.

At the termination hearing, Wythers testified that it was her opinion that termination of Francisco's parental rights was in Elias' best interests. She testified:

> Currently, Francisco is incarcerated. Elias needs a safe, stable parent that can provide for him, and he has not been able to get that with Francisco. Francisco has been offered opportunities to establish his ability to parent Elias through the life of this case and has not followed through with the services offered to be able to regain Elias into his custody.

Francisco testified at the termination hearing. He indicated that he was scheduled to be released from jail on May 21, 2017. He testified that upon his release, he has a job waiting for him in Minnesota and has an apartment "lined up." He explained that he would stay in Minnesota during the week to work, but would return to Nebraska on the weekends.

During his testimony, Francisco admitted that he did not cooperate with the Department until after the juvenile court proceedings had been pending for a year. He indicated that he began visiting with his son in July 2016, even though he did not meet with Wythers until October 2016. He also admitted that he was using drugs while out of jail on bond and that his drug use is why he often refused drug testing.

Francisco denied that he had ever hurt Aliah. He testified that on May 23, 2015, Aliah stopped breathing and that he did what he could to save her. Francisco expressed his desire to be a part of Elias' life. He testified that he believes he would be a good role model for Elias.

### 4. COUNTY COURT'S ORDERS

After the conclusion of the termination hearing, the county court entered two orders. The first order terminated Labrina's and Francisco's parental rights to Elias. The second order terminated Labrina's parental rights to Aliah. In the orders, the court found that grounds for

termination of Labrina's parental rights existed under § 43-292(2), (6), and (7) and that grounds for termination of Francisco's parental rights existed under § 43-292(2), (6), (7), and (9). The court also found that termination of Labrina's and Francisco's parental rights is in the children's best interests.

Labrina appeals and Francisco cross-appeals from the county court's orders.

## III. ASSIGNMENTS OF ERROR

On appeal, Labrina assigns as error the county court's finding that termination of her parental rights is in the best interests of Elias and Aliah.

On cross-appeal, Francisco assigns as error the county court's decision to admit into evidence copies of case plans and reports authored by various Department case workers and to permit the current Department case worker to testify about periods of time when she was not assigned to the family's case. In addition, Francisco assigns as error the county court's finding that termination of his parental rights is in the best interests of Elias.

## IV. STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Ryder J.*, 283 Neb. 318, 809 N.W.2d 255 (2012). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id.*

## V. ANALYSIS

### 1. LABRINA'S APPEAL

#### (a) Statutory Factors

In the Nebraska statutes, the bases for termination of parental rights are codified in § 43-292. Section 43-292 provides 11 separate conditions, any one of which can serve as the basis for the termination of parental rights when coupled with evidence that termination is in the best interests of the child. *In re Interest of Sir Messiah T. et al.*, 279 Neb. 900, 782 N.W.2d 320 (2010).

In its orders terminating Labrina's parental rights to Elias and Aliah, the county court found that termination was warranted pursuant to § 43-292(2), (6), and (7). On appeal, Labrina does not challenge the court's determination that the statutory criteria for termination were satisfied. Specifically, Labrina does not challenge the county court's finding that she had substantially and continuously or repeatedly neglected and refused to give Elias and Aliah necessary parental care and protection pursuant to § 43-292(2); that reasonable efforts to preserve and reunify the family failed to correct the conditions leading to the determination that the children were within the meaning of § 43-247(3)(a) pursuant to § 43-292(6); or that Elias and Aliah had been in an out-of-home placement for 15 or more months of the most recent 22 months pursuant to § 43-292(7).

Having reviewed the record, we find there was sufficient evidence presented to support the county court's decision that termination of Labrina's parental rights was warranted pursuant to § 43-292(2), (6), and (7). In particular, we find that the record reveals that Elias and Aliah were

removed from Labrina's care and custody in May 2015. They have both remained in an out-of-home placement since that time. As such, at the time the supplemental petitions requesting termination of Labrina's parental rights were filed in October 2016, both children had been in an out-of-home placement for nearly 17 months. Moreover, by the time of the termination hearing in April 2017, the children had been in an out-of-home placement for approximately 22 months.

Our de novo review of the record clearly and convincingly shows that grounds for termination of Labrina's parental rights under § 43-292(7) were proved by sufficient evidence. Given this finding, we need not discuss the evidence presented at the termination hearing which supported the county court's determination that termination of Labrina's parental rights was also warranted pursuant to § 43-292(2) or (6). Once a statutory basis for termination has been proved, the next inquiry is whether termination is in the child's best interests.

(b) Best Interests

Labrina focuses her appeal on the county court's finding that termination of her parental rights is in Elias' and Aliah's best interests. Specifically, Labrina asserts that the evidence presented at the termination hearing revealed that she was making progress towards achieving reunification with her children, but that she just needed more time to achieve the goals established in her case plan. She also asserts that there was no evidence that she posed any kind of safety risk to her children, but that the evidence revealed she does "an adequate job of managing her children's behavior." Brief for appellant at 17. Upon our de novo review of the record, we find sufficient evidence to support the county court's finding that termination of Labrina's parental rights is in the children's best interests. As such, we affirm the orders of the county court terminating Labrina's parental rights to Elias and Aliah.

Under § 43-292, once the State shows that statutory grounds for termination of parental rights exist, the State must then show that termination is in the best interests of the child. *In re Interest of Ryder J., supra*. A child's best interests are presumed to be served by having a relationship with his or her parent. *In re Interest of Isabel P. et al.*, 293 Neb. 62, 875 N.W.2d 848 (2016). This presumption is overcome only when the State has proved that the parent is unfit. *Id*. In the context of the constitutionally protected relationship between a parent and a child, parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which has caused, or probably will result in, detriment to a child's well-being. *Id*. The best interests analysis and the parental fitness analysis are fact-intensive inquiries. *Id*. And while both are separate inquiries, each examines essentially the same underlying facts as the other. *Id*.

In her brief on appeal, Labrina cites extensively to her own testimony in order to prove that throughout the juvenile court proceedings, she made "genuine attempts" to demonstrate that she is a fit parent who is capable of achieving reunification with her children. Brief for appellant at 13. However, as we discussed more fully above, it is apparent that Labrina's testimony conflicted significantly with the State's evidence. Given the county court's ultimate decision to terminate Labrina's parental rights, the court clearly found the State's evidence to be more credible. Because the county court observed the witnesses, we give weight to its decisions on credibility. See *In re*

*Interest of Ryder J., supra.* Accordingly, we focus on the State's evidence in our analysis of Labrina's assertion regarding best interests.

Evidence presented by the State at the termination hearing revealed that Labrina did not make consistent, genuine attempts to achieve reunification with her children despite the almost two years this case was pending. Labrina failed to maintain safe and stable housing; failed to maintain employment; failed to consistently attend visitation with her children; failed to avail herself of all the services being offered to her by the Department; and, ultimately, failed to make and sustain any progress towards reunification.

Even after September 2016 when the State filed the supplemental petitions requesting termination of Labrina's parental rights, she failed to demonstrate any consistency in her life. In December 2016, she lost her housing and did not obtain any further stable, independent housing during the pendency of the proceedings. Just prior to the termination hearing in April 2017, she left her job at Sprint in order to move to Lincoln to stay with a friend. As a result, she was unemployed at the time of the hearing. From December 2016 to April 2017, Labrina failed to consistently participate with her family support worker or with drug testing. By the time of the termination hearing, she had not visited with her children in two weeks, despite having regularly scheduled visitation time available to her.

Perhaps most concerning is Labrina's failure to obtain any individual therapy during the pendency of these proceedings despite such therapy being a part of her case plan since July 2015. Labrina continued to ignore her need for individual therapy after her evaluations with Dr. Meidlinger in January 2017, even though at this time, she knew that a hearing regarding the termination of her parental rights was imminent and even though Dr. Meidlinger specifically indicated in his report that Labrina needed individual therapy prior to regaining custody of her children. As Dr. Meidlinger indicated in his report, Labrina needs therapy in order to try and overcome her narcissism and her tendency to place her own needs over the needs of her children.

Essentially, the evidence presented by the State revealed that Labrina is no closer to obtaining reunification with her children than she was at the inception of these proceedings, two years ago. She has not made consistent efforts to better herself or her situation. In addition, Dr. Meidlinger has questioned Labrina's bond with her children and other evidence revealed that Labrina continues to minimize Aliah's injuries and her current condition.

Elias and Aliah need, and deserve permanence. Based on the evidence presented at the termination hearing, we conclude that Labrina is not capable of providing such permanence. Labrina is simply not capable of independently parenting her children and it appears unlikely that she will gain the capability to independently parent them in the near future.

Given all of the evidence presented at the termination hearing, we conclude that the State clearly and convincingly demonstrated that termination of Labrina's parental rights is in the children's best interests. Labrina is currently not a fit parent, in that she has proven herself incapable of providing the children with permanence, safety, or support. We, therefore, affirm the decision of the county court to terminate Labrina's parental rights to Elias and Aliah.

## 2. FRANCISCO'S CROSS-APPEAL

### (a) Evidentiary Rulings

Francisco argues that the county court erred in admitting into evidence copies of five case plans authored throughout the pendency of the proceedings by various Department case workers. He also argues that the county court erred in allowing the current Department case worker, Wythers, to testify. Francisco asserts that both the case plans and Wythers testimony contained hearsay and that the admission of this evidence violated his right to confront and cross-examine the witnesses against him.

The Nebraska Evidence Rules do not apply in cases involving the termination of parental rights. *In re Interest of Destiny A. et al.*, 274 Neb. 713, 742 N.W.2d 758 (2007). Instead, due process controls and requires that the State use fundamentally fair procedures before a court terminates parental rights. *Id*. In determining whether admission or exclusion of particular evidence would violate fundamental due process, the Nebraska Evidence Rules serve as a guidepost. *Id*.

Further, because this is a juvenile proceeding and not a criminal case, the heightened standards of the Confrontation Clause are not applicable. *In re Interest of Brian B. et al.*, 268 Neb. 870, 689 N.W.2d 184 (2004). Instead, the proper analysis is whether Francisco's due process rights were violated. See *id.* The concept of due process embodies the notion of fundamental fairness and defies precise definition. *Id*. In deciding due process requirements in a particular case, we must weigh the interest of the parent, the interest of the State, and the risk of erroneous decision given the procedures in use. *Id*. Due process is flexible and calls for such procedural protections as the particular situation demands. *Id*.

At the termination hearing, Francisco objected to the admission of exhibits 8, 9, and 10, which were case plans and reports authored by Department case workers who were previously assigned to this case and which contained information about the proceedings prior to the time when Wythers was assigned to the case in August 2016. The former case workers did not testify at trial. Francisco also objected to the admission of exhibits 12 and 20, which were a case plan and reports authored by Wythers, but which contained details about the case that predated Wythers' participation. Finally, Francisco objected to those portions of Wythers' testimony which included information about the case that predated August 2016. At the hearing, Francisco argued that the exhibits and certain portions of Wythers' testimony contained inadmissible hearsay that violated his right to confrontation. The county court overruled Francisco's objections and admitted the evidence. The court found that the case plans and reports, in particular, constituted business records and, as such, were an exception to the hearsay rule.

During the hearing, Wythers testified that when she was assigned to the case in August 2016, she thoroughly reviewed the Department's records and case file to familiarize herself with the history of the case. These records included

> all of the previously written court reports, permanency letters, court orders, visitation notes, drug testing documentation, family support notes, the previous caseworker's documentation regarding home visits, team meetings, documentation regarding any phone calls [or] contacts made, efforts to make contacts, any mail or communication that comes

in regarding the family, any requested documents such as the DNA results. Any information that's gathered about the family is scanned in and placed into [the] file system for that family.

She also testified that by reviewing the case file in its entirety, she is able to track the progress, or lack of progress, in a certain case. Wythers indicated that a thorough review of the case file is the standard practice for Department case workers assigned to an already existing case.

In her testimony, Wythers laid foundation for the admission of the reports she authored and her own testimony. In addition, she was subject to Francisco's cross-examination, including questions about how she had obtained certain information that predated her direct involvement in the case. We agree with the county court's determination that Wythers also laid the appropriate foundation for the admission of her own case plan and reports under the business records exception to the hearsay rule. Taken together, these circumstances provide sufficient guaranties of trustworthiness to make consideration of exhibits 12 and 20 and Wythers' own testimony fundamentally fair. See *In re Interest of Kassara M.*, 258 Neb. 90, 601 N.W.2d 917 (1999).

Exhibits 8, 9, and 10, were not authored by Wythers or by any other person who testified at the termination hearing. Assuming without deciding that the admission of this evidence was erroneous, we do not find that the admission constituted reversible error because Francisco has failed to demonstrate how this evidence was prejudicial to his due process rights. The improper admission of evidence by the trial court in a parental rights termination proceeding does not, in and of itself, constitute reversible error; a showing of prejudice must be made. *In re Interest of D.S. and T.S.*, 236 Neb. 413, 461 N.W.2d 415 (1990). We note that a majority of the information contained in exhibits 8, 9, and 10, was properly admitted elsewhere in the record.

Furthermore, we note that even if we did not consider any of the objectionable evidence contained in exhibits 8, 9, and 10, there was sufficient evidence presented to warrant termination of Francisco's parental rights. See *In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 417 N.W.2d 147 (1987) ("In an appeal from a judgment or order terminating parental rights, [an appellate court], in a trial de novo on the record and disregarding impermissible or improper evidence, determines whether there is clear and convincing evidence to justify termination of parental rights under the Nebraska Juvenile Code.").

(b) Statutory Factors

In its orders terminating Francisco's parental rights to Elias, the county court found that termination was warranted pursuant to § 43-292(2), (6), (7), and (9). On appeal, Francisco does not challenge the court's determination that the statutory criteria for termination were satisfied. Specifically, Francisco does not challenge the county court's finding that he had substantially and continuously or repeatedly neglected and refused to give Elias necessary parental care and protection pursuant to § 43-292(2); that reasonable efforts to preserve and reunify the family failed to correct the conditions leading to the determination that Elias was within the meaning of § 43-247(3)(a) pursuant to § 43-292(6); that Elias had been in an out-of-home placement for 15 or more months of the most recent 22 months pursuant to § 43-292(7); or that Francisco had subjected

another minor child (Aliah) to aggravated circumstances, including chronic abuse, pursuant to § 43-292(9).

Upon our de novo review of the record, we find there was sufficient evidence presented to support the county court's decision that termination of Francisco's parental rights was warranted pursuant to § 43-292(2), (6), (7), and (9). In particular, as we discussed more thoroughly above, the evidence presented at the termination hearing revealed that at the time the State filed its supplemental petition requesting termination of Francisco's parental rights, Elias had already been in an out-of-home placement for approximately 17 months. As such, the record clearly and convincingly shows that grounds for termination of Francisco's parental rights under § 43-292(7) were proved by sufficient evidence. Given this finding, we need not discuss the evidence presented at the termination hearing which supported the county court's determination that termination of Francisco's parental rights was also warranted pursuant to § 43-292(2), (6), or (9). Once a statutory basis for termination has been proved, the next inquiry is whether termination is in the child's best interests.

(c) Best Interests

Francisco does challenge in his brief on appeal the county court's determination that termination of his parental rights is in Elias' best interests. Specifically, Francisco asserts that the evidence presented at the termination hearing revealed that he had very limited time to work toward reunification with Elias because of his incarceration and that there was no evidence that he posed a risk of harm to Elias. Upon our de novo review of the record, we find that Francisco's assertions lack merit. The properly admitted evidence directly refutes Francisco's claims.

We first address Francisco's claim that there was no evidence to suggest he posed a risk of harm to Elias. Evidence presented at the termination hearing revealed that these juvenile court proceedings were initiated after Aliah suffered a traumatic brain injury which doctors believed was the result of child abuse. At the time Aliah suffered this injury, Francisco was her sole care giver. He was ultimately arrested and charged with child abuse, a Class II felony. He subsequently pled no contest to various charges related to his involvement with Aliah's injury, including negligent child abuse, a Class I misdemeanor. At the termination hearing, Francisco denied hurting Aliah. However, we note that, as we discussed above, in this appeal, Francisco failed to challenge the juvenile court's finding that termination of his parental rights was warranted pursuant to § 43-292(9), because he had subjected Aliah to abuse. Given this unchallenged finding and the other evidence suggesting that Francisco hurt Aliah while she was in his care, we cannot agree with his assertion that there was no evidence to suggest he poses a risk of harm to Elias.

Francisco failed to mitigate the risk of harm to Elias because he failed to participate in any meaningful manner with the Department's efforts to help him improve his parenting abilities, even when he was available to do so while out of jail on bond. Francisco was released from jail on bond in December 2015. He did not return to jail to serve his sentence until approximately December 2016. During the year he was out of jail and available to work with the Department and to be a parent to Elias, he failed to make any progress towards reunification. Francisco admitted that he did not have any contact with the Department or with Elias from December 2015 until at least July 2016. From July 2016 to December 2016 when he began his sentence, Francisco had some visits

with Elias and attended one team meeting. However, he failed to consistently participate in drug testing. Francisco admitted during his testimony at the termination hearing that he often declined such testing because he was using drugs while he was out of jail on bond. Francisco also did not utilize the family support worker offered to him. Essentially, Francisco did not make any genuine efforts toward achieving reunification with Elias.

Francisco testified at the termination hearing that he was to be released from jail in the month following the hearing. However, he also testified that after his release, he planned on moving to Minnesota for a job and returning to Nebraska only on the weekends. While Francisco explicitly indicated that he wished to remain a part of Elias' life, he did not explain how his future plans could incorporate continued cooperation with the Department or being a full-time parental figure for Elias.

Elias needs and deserves permanence. At the time of the termination hearing he was three years old and had been in an out-of-home placement for almost two years. Based on the evidence presented at the termination hearing, we conclude that Francisco is not capable of providing Elias with permanence. Francisco is simply not capable of independently parenting and it appears unlikely that he will gain the capability to independently parent Elias in the near future.

Given all of the evidence presented at the termination hearing, we conclude that the State clearly and convincingly demonstrated that termination of Francisco's parental rights is in Elias' best interests. Francisco is currently not a fit parent, in that he has proven himself incapable of providing Elias with permanence, safety, or support. We, therefore, affirm the decision of the county court to terminate Francisco's parental rights to Elias.

## VI. CONCLUSION

Upon our de novo review of the record, we find that there was sufficient evidence to warrant the termination of Labrina's parental rights to Elias and Aliah and to warrant the termination of Francisco's parental rights to Elias. As such, we affirm the orders of the county court terminating Labrina's and Francisco's parental rights.

AFFIRMED.