IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF MADISON W.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF MADISON W., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE AND CROSS-APPELLEE,

V.

LEAHA E., APPELLANT, AND LAIRD W., APPELLEE AND CROSS-APPELLANT.

Filed February 19, 2019.    No. A-18-438.

Appeal from the Separate Juvenile Court of Douglas County: MATTHEW R. KAHLER, Judge. Affirmed.

Julie A. Frank for appellant.

Donald W. Kleine, Douglas County Attorney, Anthony M. Hernandez, and Emily A. Peklo, Senior Certified Law Student, for appellee State of Nebraska.

Thomas C. Riley, Douglas County Public Defender, and Claudia L. McKnight for appellee Laird W.

PIRTLE, BISHOP, and ARTERBURN, Judges.

PIRTLE, Judge.

INTRODUCTION

Leaha E. appeals and Laird W. cross-appeals from individual orders of the separate juvenile court of Douglas County terminating their parental rights to their minor daughter, Madison W. Each argues that the court lacked clear and convincing evidence that supported terminating their parental rights and Leaha further argues that the court erred in finding that a witness qualified as an expert. For the reasons that follow, we affirm.

- 1 -

BACKGROUND

Madison, born in November 2015, and her sister, Milani A., born in May 2011, initially came to the attention of the Nebraska Department of Health and Human Services (DHHS) in January 2016 due to repeated incidents of domestic violence between Leaha, the children's mother, and Laird, the father of Madison. A safety plan was developed and implemented which centered on Leaha refraining from having contact with Laird. DHHS discovered that this safety plan was not being met and the present action was brought to remove Madison and Milani from the home. Milani was later removed from the case when her biological father took custody.

On March 10, 2016, the State filed a petition alleging Madison was within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016), because she lacked proper parental care by reason of the fault or habits of Leaha and Laird as their incidents of domestic violence in the presence of Madison put her at risk of harm.

An adjudication hearing was held on April 12, 2016, at which Leaha admitted engaging in domestic violence in the presence of Madison which put her at risk of harm while Laird entered a plea of no contest to identical charges. The court found that Madison came within the meaning of § 43-247(3)(a) with regard to both parents.

While Madison was in DHHS custody, a team was assembled to work with Leaha and Laird with the goal of reunification. The first permanency planning order from May 20, 2016, provided that Leaha and Laird must each complete a chemical dependency evaluation, complete a psychological evaluation, participate in individual therapy, attend Alcoholics Anonymous (AA) meetings, and submit to random urinalysis testing (UA). Laird was additionally required to participate in a domestic violence batterer's class. These objectives were further expanded in the permanency planning order of January 31, 2017, which required Leaha and Laird to complete a course for anger management, refrain from contact with each other, and remain drug/alcohol free. Leaha was additionally required to participate in the Women's Center for Advancement Foundations classes while Laird was required to complete "level 1 outpatient therapy," maintain stable housing, and maintain stable income. On July 14, 2017, Leaha was further required to complete "ASAM level III.5 residential treatment," obtain and maintain safe and stable housing, obtain legal income following discharge from residential treatment, and attend Narcotics Anonymous (NA) meetings in addition to AA meetings.

The State filed motions for termination of parental rights with respect to Leaha and Laird on July 14, 2017. The State alleged that termination of Leaha and Laird's parental rights was warranted pursuant to Neb. Rev. Stat. § 43-292(2) (Reissue 2016), because they had substantially and continuously or repeatedly neglected and refused to give their children necessary parental care and protection, pursuant to § 43-292(6) because reasonable efforts to preserve and reunify the family failed to correct the conditions that led to the determination that the children were within the meaning of § 43-247(3)(a), and pursuant to § 43-292(7) because Madison had been in an out-of-home placement for 15 or more months of the most recent 22 months. The motions specifically alleged that Leaha failed to consistently attend AA/NA meetings, failed to complete chemical dependency treatment, failed to maintain safe, stable, and appropriate housing, and failed to maintain sobriety, while Laird had failed to complete "level 1 outpatient therapy," failed to

consistently attend AA/NA meetings, failed to complete a domestic violence education course, failed to maintain a legal source of income, failed to consistently attend visitation, and failed to consistently submit to UA testing. In addition, the State alleged that termination of parental rights was in the best interests of Madison.

During the pendency of the motions for termination of parental rights, an additional permanency planning order was issued on January 16, 2018, which required Leaha to complete "level 1 outpatient treatment," provide proof of compliance with court orders to the case professionals, and maintain contact with the case professionals, in addition to the previous requirements.

Trial was held on the motions to terminate parental rights on March 7, March 15, and April 3, 2018. Laird and Leaha were each present with their respective attorney, as well as the guardian ad litem for Madison.

The State's first witness was Erica Austin, a drug testing supervisor at Capstone Behavioral Health. Austin was assigned to work with Leaha and arrange times to collect samples for UA testing. She provided a record of her communications with Leaha which showed that multiple attempts had been made to call and text Leaha to set up testing in December 2017 and January 2018, but Leaha had not replied to any of those messages.

The State's second witness was Tiffany Gormley, a "float therapist" with CenterPointe. CenterPointe is a residential treatment facility where Leaha completed an addiction treatment program. Gormley discharged Leaha from their facility for successful completion of the "ASAM level III.5" program. As part of the discharge process, Gormley recommended that Leaha continue her recovery via "level 1 outpatient treatment."

The State's third witness was Sarah Valentine, a drug testing supervisor with Owens & Associates. Owens & Associates handled the UA testing for Laird. Valentine provided a record of their attempts and tests with Laird which showed that they had offered 148 tests of which 63 were successful and 85 were unsuccessful. Owens & Associates also handled UA testing for Leaha. Valentine provided a record of their attempts and tests with Leaha which showed they had offered 166 tests of which 73 were successful and 93 were unsuccessful.

The State's fourth witness was Brittany Jeary, a family permanency specialist (FPS) with PromiseShip. Jeary worked with Madison as a caseworker from March 2016 to April 2017. Jeary stated that Madison was made a state ward and removed from Leaha and Laird's care because of domestic violence and safety concerns. Jeary testified that Leaha and Laird had repeated contact with one another which often resulted in domestic violence, including an incident in January 2017 where Leaha arrived at a court hearing with a patch on her eye and reported to the court that she had been beaten by Laird. Six days later, Leaha reported to Jeary that the domestic violence incident with Laird did not actually happen.

Jeary stated that visitation for both Leaha and Laird was supervised and never transitioned to semi-supervised or unsupervised visitation, which is a requirement for reunification. In particular, Jeary testified that there were reports from visitation workers that Leaha appeared to be under the influence of drugs or alcohol during visits, although she could not confirm this. At no point during Jeary's time as a caseworker was Madison returned to Leaha or Laird.

Jeary testified Leaha had completed her chemical dependency evaluation, but that the recommendation for intensive outpatient treatment was not completed. Jeary stated the reason Leaha was discharged from the outpatient program was because she continued to use drugs and test positive for alcohol and marijuana. After this discharge, the recommendation made in November 2016 was for Leaha to complete inpatient treatment, but she had not yet begun the treatment while Jeary was a caseworker.

Jeary testified that Laird, during her time as caseworker, only participated in approximately 25 percent of his drug tests and completed a chemical dependency evaluation. Jeary also testified that she did not receive any documentation that demonstrated Laird was attending AA or NA meetings or that he had completed "level 1 outpatient therapy." Jeary did receive documentation that Laird had participated in some batterer's intervention courses, but did not receive any information that he had completed the courses. Jeary testified that Laird did not consistently provide her with documentation that he was maintaining a legal source of income.

The State's fifth witness was Morgan Herchenbach, a FPS with PromiseShip. Herchenbach has a BA in psychology with a minor in child, youth, and family studies and had worked for PromiseShip for a year at the time of trial, including completing a 3-month training period and additional training since the beginning of her work as a FPS. Herchenbach became the caseworker for Madison in April 2017. Herchenbach prepared for her assignment by reading through the case file and shadowed Jeary for a month and a half before she took over the case. She noted that the original issues presented in the intakes were domestic violence and substance abuse, and that there are still issues with substance abuse.

Herchenbach testified that Leaha continued to not complete drug tests, did not complete "level 1 outpatient treatment," and did not provide proof of attending AA or NA meetings. Herchenbach further testified that Leaha had lied to her for 3 months by telling Herchenbach that she was attending classes and involved in a program when she was not.

Herchenbach stated that Leaha did complete a psychological evaluation. Leaha also completed an inpatient treatment program. Herchenbach also reported that Leaha was maintaining safe and appropriate housing. Leaha also divorced Laird in April 2018 and had not been in contact with him since then.

Herchenbach testified that Laird reported to her that he had not completed treatment. Further, Laird was unsuccessfully discharged from drug testing in October 2017 and had not been in compliance with the court order to do so since then. Herchenbach testified that Laird had also not provided any documentation of attending AA or NA meetings. He had also not been able to demonstrate safe housing, and the last time he provided proof of a legal source of income was in August or September 2017.

Herchenbach testified that it was her opinion that the parental rights of both Leaha and Laird should be terminated. She stated this was based on her education, training, and her year of experience with this family. She also relied upon a "computer model" for formulating her opinion. She further stated that she believed it would be in the best interests of Madison, as Leaha and Laird had not made progress in meeting the court ordered plans for reunification, and continued to have issues with substance abuse.

Leaha was then called and testified on her own behalf. While she testified as to the many ways in which she had improved and followed the court order, she also admitted that she was still having issues with drugs and alcohol, stating that she can control her alcoholism. She also testified that after the March 7, 2018, hearing she was arrested for engaging in physical violence with her sister.

The State called Jeary and Herchenbach as rebuttal witnesses who each testified to the failure of Leaha to complete UA testing on a regular basis.

Following trial, in two orders dated April 23, 2018, the juvenile court found the allegations in the State's motions to be true by clear and convincing evidence with respect to each parent. The court determined that Laird and Leaha's parental rights should be terminated pursuant to § 43-292(2), (6), and (7), and that termination was in Madison's best interests.

## ASSIGNMENTS OF ERROR

On appeal, Leaha assigns that the juvenile court erred in (1) terminating her parental rights on the basis that the State failed to adduce clear and convincing evidence that the termination was in the child's best interests, and (2) finding that Herchenbach was qualified to testify as an expert and in relying upon her testimony in determining the best interests of the child.

On cross-appeal, Laird assigns that the juvenile court erred in terminating his parental rights on the basis that the State failed to adduce clear and convincing evidence that the termination was in the child's best interests.

## STANDARD OF REVIEW

Juvenile court cases are reviewed *de novo* on the record, and the appellate court is required to reach a conclusion independent of the juvenile court's findings; however, when the evidence is in conflict, the appellate court will consider and give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Phyllisa B.*, 265 Neb. 53, 654 N.W.2d 738 (2002).

## ANALYSIS

*Statutory Grounds for Termination.*

Laird and Leaha dispute whether the State met its burden with respect to § 43-292(2) and (6) to demonstrate a statutory ground to terminate their parental rights.

In Nebraska, the bases for termination of parental rights are codified in § 43-292. Section 43-292 provides 11 separate conditions, any one of which can serve as the basis for the termination of parental rights when coupled with evidence that termination is in the best interests of the child. *In re Interest of Sir Messiah T. et al.*, 279 Neb. 900, 782 N.W.2d 320 (2010).

In the present case, Madison was first removed in March 2016 and has not returned to the home, care, or control of Leaha or Laird. The motion for termination of parental rights was filed on July 17, 2017. Thus, Madison has been in out-of-home placement for more than 15 consecutive months. Neither Laird nor Leaha dispute that § 43-292(7), which provides that there is a basis for termination of parental rights if the child has been in an out-of-home placement for 15 of the last 22 months, has been met. As such, we need not address whether the State's burden was met as to

§ 43-292(2) and (6), and find that the State has proven a statutory ground for termination. The next inquiry is whether termination of Laird and Leaha's parental rights was in Madison's best interests.

*Best Interests of Child and Parental Fitness.*

As an initial issue, Leaha argues that the court erred in allowing Herchenbach to provide an opinion on the best interests of Madison because she was not qualified to give an expert opinion. Neb. Rev. Stat. § 27-702 (Reissue 2016) governs the admissibility of expert testimony and provides that the witness must be qualified as an expert: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issues, a witness qualified as an expert by knowledge, skill experience, training, or education, may testify thereto in the form of an opinion or otherwise."

However, the Nebraska Rules of Evidence do not apply in cases involving the termination of parental rights. *In re Interest of Destiny A. et al.*, 274 Neb. 713, 742 N.W.2d 758 (2007). Instead, due process controls and requires that the State use fundamentally fair procedures before a court terminates parental rights. *Id.* In determining whether admission or exclusion of particular evidence would violate fundamental due process, the Nebraska Evidence Rules serve as a guidepost. *Id.* Procedural due process includes notice to the person whose right is affected by the proceeding; reasonable opportunity to refute or defend against the charge or accusation; reasonable opportunity to confront and cross-examine adverse witnesses and present evidence of the charge or accusation; representation by counsel, when such representation is required by the Constitution or statutes; and a hearing before an impartial decision maker. *In re Interest of Kelley D. & Heather D.*, 256 Neb. 465, 590 N.W.2d 392 (1999).

Our review of the record reveals that Leaha received proper notice of the termination hearings and that at those hearings she appeared and was represented by counsel. Examining the testimony of Herchenbach, the record reflects that Leaha's counsel cross-examined Herchenbach and objected to the testimony on multiple occasions. We conclude that Leaha's right to due process was not abridged by the juvenile court's decision to admit Herchenbach's opinion testimony regarding termination of her parental rights.

We note that Herchenbach based her opinion on her observations and interactions with Leaha and Laird as the second caseworker. In taking on the case she had reviewed the prior case work and meetings with the parents and child. Herchenbach provided specific testimony as to how both Leaha and Laird had failed to comply with the court's orders and had continued in behaviors that would put Madison at risk. While Leaha presented evidence that she had completed some of the court ordered rehabilitation, Herchenbach acknowledged these actions as part of her opinion.

Leaha specifically challenges that Herchenbach did not have sufficient education or experience to provide such an opinion. However, Herchenbach had completed a BA in psychology including a minor in child, youth, and family studies, had completed 3 months of training prior to taking on full FPS duties, and received additional training over the course of her 1 year employment with PromiseShip prior to giving the opinion at trial. Keeping in mind that the court was free to determine the weight to be given Herchenbach's testimony, we find this was sufficient experience and education when combined with her specific knowledge of the case to provide opinion testimony without offending the established tenets of due process.

Leaha and Laird each allege that the juvenile court erred in finding that there was clear and convincing evidence demonstrating that termination of their parental rights was in Madison's best interests. In order to terminate parental rights, the State must prove, by clear and convincing evidence, that termination is in the child's best interest in addition to proving the statutory grounds for termination. *In re Interest Nicole M.*, 287 Neb. 685, 844 N.W.2d 65 (2014). A parent's right to raise his or her child is constitutionally protected; as such, before a court may terminate parental rights, the State must also show that the parent is unfit. *Id.* There is a rebuttable presumption that the best interest of a child are served by having a relationship with his or her parent. *Id.* The presumption is overcome only when the State has proved that a parent is unfit. *Id.* The term "unfitness" is not expressly used in § 43-292, but the concept is generally encompassed by the fault and neglect subsections of that statute, and also through a determination of the child's best interests. *In re Interest of Nicole M., supra.* In discussing the constitutionally protected relationship between a parent and a child, the Nebraska Supreme Court has stated: "'[p]arental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to a child's wellbeing.'" *Id.* at 704, 844 N.W.2d at 80. The best interests' analysis and the parental fitness analysis are fact-intensive inquiries; while both are separate inquiries, each examines essentially the same underlying facts as the other. *In re Interest of Nicole M., supra.*

Leaha has taken some steps to comply with the court's orders such as completing a psychological evaluation, completing an inpatient treatment program at CenterPointe, maintaining safe and appropriate housing, and in divorcing Laird and ceasing contact with him. However, the evidence also shows that one of the primary concerns with Leaha is her alcohol and drug abuse which was continuous over the course of the proceedings, and her failure to comply with the UA testing requirements. Leaha has also demonstrated that she continues to have issues with anger and violence such as the incident involving physical violence with her sister which occurred during the course of the hearings on the motions for termination of parental rights.

Laird has taken minimal steps to comply with the court's orders and, as with Leaha, has failed to address his issues with alcohol use, including failing to complete treatment, regularly submit for UA testing, and attend AA meetings. He has further failed to maintain safe housing and demonstrate a legal source of income.

Herchenbach testified that, in her opinion, it was in the best interests of Madison to terminate Leaha and Laird's parental rights. This opinion was based on the continuing failure of Leaha and Laird to comply with the court orders. During the time that Madison has been in custody neither Leaha nor Laird have moved past supervised visitation. Herchenbach testified that it is in the best interests of Madison to achieve permanency as she has been in the State's care for 24 months.

Leaha and Laird have failed to comply with court orders, and the continued failure to do so over the course of 2 years does not demonstrate a willingness or desire to parent Madison. On our de novo review of the record, we find clear and convincing evidence that both Leaha and Laird are unfit. We also find that it was shown by clear and convincing evidence that termination of their parental rights would be in Madison's best interests.

CONCLUSION

We conclude that the juvenile court did not err in terminating Leaha and Laird's parental rights to Madison. As such, the court's order is affirmed.

AFFIRMED.